375 P.2d 556

Mable E. BAKER, Widow of James Houston Baker, Deceased, and Elsie L. Page, as Natural Guardian of Sandra Louise Baker and James Wayne Baker, Minor Children of the deceased, James Houston Baker, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona and Arizona Seal Coat Company, Inc., Respondents.

No. 7468.

Supreme Court of Arizona,

En Banc.

Oct. 31, 1962.

Rehearing Denied Dec. 11, 1962.

Kent Silverthorne, James S. Eddy, Sacramento, Cal., for appellants.

Donald J. Morgan, Phoenix, for respondent, The Industrial Commission of Arizona; Edward E. Davis, C. E. Singer, Jr., Lorin G. Shelley, and Ben P. Marshall, Phoenix, of counsel.

LOCKWOOD, Justice.

This is a review by certiorari of an award of the Industrial Commission of Arizona denying petitioners death benefits for the demise of James Houston Baker

on the grounds that the deceased was not hired in Arizona and at the time of his death was under a California contract of hire and was not regularly employed in the State of Arizona.

The facts are: Decedent James H. Baker was a resident of Riverside, California, and had been a member of Local 12, International Union of Operating Engineers, in California. While in California, Baker had worked with Grant Spuhler, the foreman, under Richard W. Hoagland as superintendent on various construction jobs since 1956.

In February, 1960, Hoagland, along with two others, organized an Arizona corporation, Arizona Seal Coat Company, Inc., and a policy of industrial insurance was issued on their application which covered the corporation under the provisions of the Arizona Workmen's Compensation Act. This new corporation, was to do and did work in Arizona. Hoagland asked Spuhler to work with him, and the two of them checked over the various job locations early in 1960. Spuhler testified that there had been discussions about getting Baker to go with him on the job, but that no definite arrangements had been made. However, Baker came to Tucson, Arizona, and found that Hoagland had cleared both him and Spuhler through the Arizona Local 428 to be eligible to work in Arizona. The referrals were made in the name of E. L. Yeager Company which Hoagland had told the un-

ion officials he represented. After receiving their clearances, Baker and Spuhler went to the Tucson Airport and were put to work on March 28, 1960.

Baker then began receiving pay checks from Arizona Seal Coat Company, Inc., and continued to receive such payments while working on various other Arizona construction projects through July 20, 1960. At this latter time, the work crew was transferred to a project in Bakersfield, California, for two or three weeks, and then on to Boonville, California, for one week. Upon being transferred from Boonville to Point Arena, California, Baker was given orders to drive a Broommaster (a highway sweeper) to the new work project. Baker was killed when the Broommaster overturned on a curve. During all this time up until his death, Baker still received his pay checks from Arizona Seal Coat Company, Inc. Upon moving to California, Baker attempted to become reinstated with the California Local Union 12, and was thereafter considered a California employee by Local 12.

Petitioner Mable Baker filed an application for death benefits with the Arizona Commission as the widow of James Houston Baker and petitioners Sandra Louise

Baker and James Wayne Baker, through their mother and natural guardian, Elsie Page as Guardian ad Litem, filed an application for death benefits as dependent children of said decedent. The applications were consolidated for hearing and were both denied on December 20, 1960, on the jurisdictional grounds above set out, this award being affirmed on rehearing on June 19, 1961.

It is petitioners' contention that the facts of this case fall within the provisions of A.R.S. § 23–904(A),[1] as the deceased was both hired and regularly employed in Arizona by Arizona Seal Coat Company, Inc. Petitioners further argue that Baker remained employed with said employer after being transferred into California and up until the time of his death, and that no new employment contract was entered between him and the employer.

 The statute clearly intends that every person who has been hired in Arizona or who is regularly employed in Arizona shall be insured under a policy of insurance issued or approved by the Commission. Industrial Commission v. Watson Bros. Transp. Co., Inc., 75 Ariz. 357, 256 P.2d 730 (1953). Under this situation "the employer and his insurance carrier are

---

1. The statute reads: "If a workman *who has been hired or is regularly employed in this state* receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state even though the injury was received without the state." (Italics supplied.)

made subject to the jurisdiction of the commission and the courts of Arizona for (a) the payment of compensation for injuries or death by accident arising out of and in the course of employment 'wheresoever such injury has occurred.' " Industrial Commission v. J. & J. Const. Co., 72 Ariz. 139, 144, 231 P.2d 762, 765 (1951). The initial question thus presented is whether the findings of the commission that the deceased was not hired in Arizona or under an Arizona contract of hire at the time of the accident are supported by competent evidence.

Upon examination of the record it appears to us that the commission reached an erroneous conclusion of law in finding that the deceased was not hired in Arizona. The only evidence tending to support the commission's finding is that Spuhler testified that he presumed, but was not definite, that Hoagland had talked to Baker in California concerning the Arizona work prior to Baker's going to Arizona, and the testimony of Lee Renick, the district representative for the Operating Engineers, Local 428, that Hoagland upon asking the Arizona Local for Baker's clearance stated that Baker had been working for Hoagland with the E. L. Yeager Co. of California. It is not material that indefinite conversations may have taken place in California between Baker and Hoagland, since unless a clearance could be obtained from the Arizona Local no contract of employment could have been made. Baker may have had every expectation of being employed by Hoagland when he came to Arizona, but according to direct testimony by Spuhler, and Hoagland's affidavit, the contract was not entered into until Baker reached the Tucson Airport after receiving his union clearance. The payroll records of Arizona Seal Coat Company, Inc. show that Baker started working for it on March 28, and further that he remained that corporation's employee until his death in August, 1960. There is no competent evidence that Baker was working for E. L. Yeager Co. during this period. The fact that Hoagland misrepresented Baker's status to the Arizona union officials by stating that Baker had been employed by E. L. Yeager Co. could not alter the true circumstances of the hiring in Arizona.

The fact that an employee hired in Arizona continues working in California for the same employer does not change his *contract of hire* from an Arizona contract to a California contract. In Industrial Commission v. J. & J. Const. Co., 72 Ariz. 139, 231 P.2d 762 (1951), we held that the clear legislative intent was that every person hired within Arizona to perform work for his employer in the regular course of business, whether in or out of the state, should be insured under the Arizona Workmen's Compensation law.

 Since the facts show that Baker was hired in Arizona, and continued to work for the same employer, although in California, where his death occurred, the Commission had jurisdiction. Award set aside.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.