500 P.2d 1125

Mary F. PAULEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

H. A. Leavitt Attractions, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA-IC 715.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 19, 1972.

Rehearing Denied Oct. 17, 1972.

Review Granted Nov. 21, 1972.

**138**

Gorey & Ely, by Joseph M. Bettini, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Harlan J. Crossman, Phoenix, for respondents Employer and Carrier.

CASE, Judge.

This appeal by certiorari questions the correctness of a Decision upon Hearing and Findings and Award for Noncompensable Claim of the Industrial Commission.

On or about 4 May 1970, petitioner spoke with a Mr. H. A. Leavitt, officer of respondent employer, at his home in Phoenix in connection with the possibility of employment as a ticket seller with the carnival owned by respondent. Petitioner was ad-vised that the carnival would be leaving on its tour within a few days and that she would be contacted. Thereafter, the record reveals that on or about 6 May petitioner filled out a social security and income tax withholding form at Mr. Leavitt's home. Petitioner was advised that the carnival would depart for California the next morning. On that morning, petitioner drove a pick-up truck (not the property of respondent employer) to California, arriving the 12th of May, 1970. Petitioner was not paid for the trip to California, nor was she reimbursed for any expenses incurred by her. Testimony establishes that petitioner was to be paid the sum of $60 a week for her employment and the first check she received was on 18 May 1970 for the week which had commenced the 15th of May, 1970. She continued to work until the 30th of June, which was the day before the carnival was to open in a small California city. On that day, the carnival was being set up in a lot next to a park. Petitioner took a coffee break at approximately 3 o'clock on that day and upon hearing the bell of an ice cream truck in the adjacent park, petitioner decided to purchase some ice cream. The truck was located in the adjacent park approximately 25 yards from petitioner's camper, the lot and park being separated by an irrigation ditch. While crossing this ditch, petitioner slipped and injured her left ankle.

The Industrial Commission determined that petitioner was not "hired or regularly employed" in Arizona and that her ankle injury did not arise out of and in the course of her employment.

There are two questions to be determined. (1) Was petitioner hired within the state? (2) Did her injury arise out of and in the course of her employment?

A.R.S. § 23–904, subsec. A states:

"If a workman who has been hired or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation ac-

cording to the law of this state even though the injury was received without the state."

We have previously held that this section pertains to recovery for compensable injuries where a person is hired or employed within Arizona and suffers the injury outside Arizona. Agee v. Industrial Commission, 10 Ariz.App. 1, 455 P.2d 288 (1969).

 The transcript of the hearing reveals the following testimony:

"Q. When were you first hired by the Leavitt Company?

A. I don't remember if it was the 3rd or 4th of May. It was at Mr. Leavitt's.

Q. How did this come about?

A. Well, we heard that they needed help so I called Mr. Leavitt and he told me where they lived, and told us to come over there, which—

Q. Where was that?

A. At 924 East Elwood.

Q. In what city?

A. Phoenix.

Q. Phoenix, Arizona?

A. Yes, sir.

Q. And you went over there to where he lived, and what happened after that?

A. We went over to where—to his home, and he showed us around his rides and explained to us that they were all trailer mounted, and so forth, and he told us to call him on the 4th, because he thought he was going to leave on the 5th, and then they changed their minds and didn't leave until the 7th of May, 1970.

So I called the day before, on the 6th, and he said that they was going to leave real early, so we went over there that afternoon, the day before we left, and we left about 6:00 o'clock on the morning of the 7th.

Q. Was it he who hired you?

A. Yes.

* * * * * *

Q. Did Mrs. Leavitt enter into the discussions on whether or not you were going to be hired?

A. Not until I was hired and I went into her house. Mr. Leavitt told me to go in and fill out the—one of those sheets of paper that has your name, Social Security number, and so forth.

Q. Can you place approximately the date of that?

A. It was—we filled out the paper the day before we left, I think it was.

Q. Was this their house in Phoenix?

A. Yes, sir. I know it was the day before, because she was packing the papers and tickets and things into their trailer.

* * *"

and further (Mrs. Leavitt testifying):

"Q. I believe the question was: Was she hired in Arizona?

A. Yes.

* * * * * *

Q. (The Hearing Officer) Mrs. Pauley testified that before she departed with the rest of you for California from Phoenix, she filled out certain papers at your house. Do you recall that incident?

A. Yes. It was the little slip filling out their name and their amount of dependents, and like that—Social Security.

Q. Is that the slip employers customarily provide to new employees in relation to the income tax deductions, Social Security?

A. Yes.

Q. Was that done in your home?

A. Yes.

Q. (Mr. Crossman) And were you there personally while she did it?

A. Yes.

* * * * * *

Q. Was it before you left Phoenix for the California trip?

A. Yes, it was.

* * *"

The testimony in this case indicates that the carnival was to tour California and re—

turn to Arizona to complete the tour. It does not appear that the necessary contractual elements, i. e., offer, acceptance and consideration, were satisfied in Arizona. For an employer-employee relationship to exist, there must be present both a duty for the employee to perform and a right to receive compensation for this performance. It is apparent that petitioner would not have been paid and, in fact, was not paid until she reported for work in California. We are not impressed by the fact that she traveled to California with the expectation of employment since it is the *actual* employment which controls rather than the degree of expectation of receiving employment. Baker v. Industrial Commission, 92 Ariz. 198, 375 P.2d 556 (1962). The fact that Mrs. Leavitt testified that petitioner was hired in Arizona is not persuasive since it is no more than a conclusion on the part of Mrs. Leavitt.

Having determined that petitioner does not fall within the purview of A.R.S. § 23-904, subsec. A, it is not necessary that we concern ourselves with the issue of whether petitioner was injured within the course and scope of her employment.

Accordingly, the award is affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.