503 P.2d 373

**Otto A. KNACK, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION of Arizona, Respondent,**

**J. V. Moan Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 11029–PR.**

Supreme Court of Arizona, In Banc.

Nov. 22, 1972.

Rehearing Denied Dec. 19, 1972.

**546**

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent.

·. Robert K. Park, Chief Counsel, State Compensation Fund by Dee-Dee Samet, Phoenix, for respondents Employer and Carrier.

STRUCKMEYER, Justice.

Respondent, J. V. Moan Company, is a commissary company engaged in the food service business contracting for the service of meals to the workmen of other employers. One of its clientele is the Southern Pacific Company for which food is furnished to its tracklaying crews in some of the western states.

Petitioner is by occupation a cook and had worked for the Moan Company for some 20 years until he suffered a stroke while employed near Horse Mesa Dam in Arizona. He was hospitalized and unemployed for over a year. On June 15, 1969, while living in Tucson, Arizona, he discussed working for the Moan Company again with C. W. Woodcock, a supervisor in charge of some aspects of the company's business. Woodcock hired petitioner and drove him in a company car from Tucson to Indio, California, where he started to work. Petitioner's paychecks were at first made out in Arizona, drawn on a California bank and mailed to him. Later, when he was sent to Nevada and Oregon, they were made out in Lafayette, California. Petitioner continued to work for the commissary company as a cook on a train which accompanied tracklaying crews.

In Oregon, on the night of September 30, 1969, he went outside the train car to open up a butane tank from which gas for cooking was obtained. He slipped and fell, rolling down an embankment and sustaining certain disabling injuries for which he applied for·compensation with the Industrial Commission of Arizona. The Industrial Commission of Arizona found a non-compensable claim on the ground that petitioner was not hired in Arizona within the meaning of its Workmen's Compensation Act.

Arizona's statute, by § 23–904, subsec. A, provides:

"If a workman who has been hired * * . * in this state receives a·personal

injury * * *, he shall be entitled to compensation according to the law of this state even though the injury was received without the state."

Of this statute, we said in Collins v. American Buslines, Inc., 79 Ariz. 220, 228–229, 286 P.2d 214, 220 (1955), rev'd on other grounds, 350 U.S. 528, 76 S.Ct. 582, 100 L.Ed. 672 (1956):

"Section 56–923, A.C.A.1939, indicates that the application of our workmen's compensation laws is not to be limited to only those injuries occurring within the state. The legislature specifically intended extraterritorial coverage for employees hired in this state. Presumably employees hired in Arizona are citizens of this state and entitled to the benefits of Arizona law when their employment takes them into another state."

*See,* Baker v. Industrial Commission, 92 Ariz. 198, 375 P.2d 556 (1962); and Alaska Packers Ass'n v. Industrial Accident Commission, 1 Cal.2d 250, 34 P.2d 716 (1934), aff'd, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); Travelers Ins. Co. v. Workmen's Comp. App. Bd., 68 Cal.2d 7, 64 Cal.Rptr. 440, 434 P.2d 992 (1967); Gardner Motor Co. v. Feistel, 160 Colo. 135, 414 P.2d 915 (1966); State Compensation Ins. Fund v. Howington, 133 Colo. 583, 298 P.2d 963 (1956); McLaughlin's Case, 274 Mass. 217, 174 N.E. 338 (1931); Roan v. D. W. Falls, Inc., 72 N.M. 464, 384 P.2d 896 (1963); Franklin v. Geo. P. Livermore, Inc., 58 N.M. 349, 270 P.2d 983 (1954); Prendergast v. Industrial Commission, 136 Ohio St. 535, 27 N.E.2d 235 (1940); Allen v. Industrial Commission, 110 Utah 328, 335–340, 172 P.2d 669, 672–675 (1946), for the application of similar statutes in other states.

The Arizona statute is predicated on the benevolent social policy that residents of Arizona who may return after injuries to their homes in this state or whose families may reside in Arizona need the protection of Arizona's laws. The workman or his family may become indigent and dependent upon welfare in Arizona if the workman is incapacitated or killed in an accident occurring while working for an employer outside of Arizona.

The evidence before the Commission referee established that petitioner was hired in Arizona.

Petitioner testified on cross-examination:

"Q Now, isn't it true that Mr. Moan told you—I mean, Mr. Woodcock told you that if you went to California they could give you a job in California?

A Oh, he just told me he had a job in Indio, California.

Q And he said that if you wanted to work in California, that you could go over there and be hired, is that correct?

A No, he *hired* me here." (Emphasis added.)

Woodcock testified:

"Q Did you have occasion to hire him to work in the State of California?

A Yes, sir.

Q Where did you hire him?

A I *hired* him in Tucson." (Emphasis added.)

Woodcock also testified:

"Q As I understand, he just rode with you when you went over to California, is that correct?

A Yes, I *hired* him for the job and took him over there in the company car.

Q But he wasn't paid for that day, he was paid for the day he started in California?

A Yes, Ma'am.

*  *  *  *  *  *

Q And I believe you stated that at that time there was never any intention that he work in Arizona; he was intended to work with the California crew, is that correct?

A Yes. Although, this crew is a rolling crew, it could have went to Arizona or Texas, Phoenix, any place that the S.P. desired this crew to move.

548

Q But at that time it was working in California, Nevada and Oregon, is that correct?

A Yes." (Emphasis added.)

"Hire" is defined by Webster's Third International Dictionary as "1a: to engage the personal services of for a fixed sum: employ for wages * * *" The Commission, however, interprets the foregoing testimony as creating a unilateral contract, arguing that until petitioner reported for work and worked in California he was not hired. We do not think so.

The distinction between unilateral and bilateral contracts is set forth in the Restatement of Contracts, § 12 (1932), as:

"A unilateral contract is one in which no promisor receives a promise as consideration for his promise. A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and promisee."

Comment "a" to § 12 clarifies this definition:

"a. In a unilateral contract the exchange for the promise is something other than a promise; in a bilateral contract promises are exchanged for one another."

■■■ The evidence discloses that both petitioner and Woodcock believed that a contract of employment was agreed to in Tucson. We do not construe the testimony to mean that petitioner was unilaterally promised a job if he reported for and worked at Indio. That the place he was to commence work was Indio, California is simply one of the conditions of the contract of employment. That he was to be paid after he commenced work is another condition of the employment contract. We think employment contracts universally imply, if they do not expressly state, that the employee will work where directed and be paid after the service is performed. A promise for a promise is adequate legal consideration to support a contract. Tucson Federal Sav. & L. Ass'n v. Aetna Invest. Corp., 74 Ariz. 163, 169, 245 P.2d 423, 427 (1952).

If it were possible to say the testimony is capable of a different interpretation, § 31 of the Restatement of Contracts would govern:

"In case of doubt it is presumed that an offer invites the formation of a bilateral contract by an acceptance amounting in effect to a promise by the offeree to perform what the offer requests, rather than the formation of one or more unilateral contracts by actual performance on the part of the offeree."

As comment "a" thereto states, an interpretation is favored that a bilateral contract is proposed, since it immediately and fully protects both parties. And illustration "1" further clarifies the text statement:

"1. A says to B: 'If you will work in my garden next week I will give you $5 a day.' B says, 'I'll do it.' There is a bilateral contract."

For analogous decisions under varying factual situations where an employee was hired in one state to work in another and jurisdiction was found in the state of hiring, see Benguet Consol. Min. Co. v. Industrial Accident Commission, 36 Cal.App. 2d 158, 97 P.2d 267 (1939); Sims v. Truscon Steel Co., 343 Mo. 1216, 126 S.W.2d 204, cert. denied 307 U.S. 646, 59 S.Ct. 1045, 83 L.Ed. 1526 (1939); Foster Wheeler Corp. v. Bennett, 354 P.2d 764 (Okl.1960); Jutton-Kelly Co. v. Industrial Comm., 220 Wis. 127, 264 N.W. 630 (1936).

The opinion of the Court of Appeals is vacated and the award of the Industrial Commission is set aside.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.