506 P.2d 1071

**CITY PRODUCTS CORPORATION and Royal Globe Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Charles D. Hobbs, Respondent Employee.**

**No. I CA–IC 713.**

Court of Appeals of Arizona, Division 1, Department B.

March 1, 1973.

Rehearing Denied March 29, 1973.

Review Denied May 1, 1973.

Glen D. Webster, Jr., Phoenix, for petitioners.

Charles M. Brewer, Ltd., by James D. Lester, Phoenix, for respondent-employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

JACOBSON, Chief Judge, Division 1.

The sole issue on this appeal, in an Industrial Commission award setting, is whether the injured workman is entitled to Arizona workman's compensation benefits for injuries sustained in the state of California.

Petitioner, City Products Corporation (City Products), is engaged in the business of vacuuming, a pre-cooling and loading packages of produce onto freight cars or trucks for growers and producers. City Products maintains plants in Arizona, New Mexico and California, but maintains its principal place of business and headquarters in Phoenix, Arizona. City Products' business is of a seasonal nature depending upon crops to be processed. Respondent, Charles D. Hobbs, has been employed by City Products for approximately eleven years, his employment being seasonal in nature when work became available at the various plants in Arizona, New Mexico and California.

At each plant, located in the various states, the employer maintains a separate seniority employee list. A union contract requires that when the employer has work available at a particular plant it must first notify, chronologically, all employees who appear on the seniority list for that plant as to the availability of employment. Failure to accept employment after notification results in the employee's name being stricken from the seniority list maintained at that particular plant. While the union contract itself was not admitted into evidence, it was conceded that it contains no provisions dealing with the issue of how or when employment was to commence.

Mr. Hobbs had been employed by City Products at its Glendale, Arizona, plant from October 13, 1969, to December 17, 1969, when he was terminated because the work at that plant ceased. In the early part of January 1970, Mr. Hobbs received a telephone call at his Phoenix, Arizona, residence from his employer's place of business in Phoenix, advising him of the date work would commence at the El Centro,

California, plant of City Products. Mr. Hobbs' version of what occurred during that telephone conversation was as follows:

"Q. Now specifically with respect to the notification of the availability of work to you at the El Centro plant in the year of 1970, January, 1970, how did you receive notice that that work was available to you?

"A. I received it through Mr. Harmon, Mr. John Harmon.

"Q. How, by phone or by person?

"A. By phone.

"Q. Do you know where he was when he called you?

"A. At the office.

"Q. Which office?

"A. His main office.

"Q. Where were you when you received the call?

"A. I was home, 4748 N. 21st Avenue.

"Q. What did Mr. Harmon tell you?

"A. He told me to go to El Centro and go to work.

"Q. Did he tell you when to be there?

"A. Yes.

"Q. What date, do you remember?

"A. Well, he told me to be there by 2:00 o'clock, I believe, January the 8th. That is an estimate.

"Q. Do you know what date this was that you receive (sic) the phone call?

"A. It would have been the day before.

"Q. What did you tell Mr. Harmon?

"A. I told him I would be there.

\*    \*    \*    \*    \*    \*

"Q. Did you go to work?

"A. Yes."

Pursuant to this telephone conversation, Mr. Hobbs at his own expense, drove from his home in Phoenix, Arizona, to El Centro, California, where his salary commenced when he actually began work in El Centro. While Mr. Hobbs had worked for City Products previously, he concedes that

his work at the El Centro, California plant was under a new contract of hire.

On February 24, 1970, Mr. Hobbs sustained an injury while employed in El Centro, California, for which he filed and received benefits under California's Workmen's Compensation Act. On May 22, 1970, he filed a claim for benefits under Arizona's Workmen's Compensation Act, which was denied by the carrier on the basis that Mr. Hobbs' hiring and injury occurred in California and hence he was not covered by Arizona Workmen's Compensation. A timely request for a hearing was made which resulted in a hearing being held and a finding by the hearing officer that Mr. Hobbs was covered by Arizona Workmen's Compensation. This finding was affirmed by an award of the Commission and this appeal followed.

At this point we are not concerned with the extent of Mr. Hobbs' injuries or the benefits, if any, which he may receive for such injuries, but solely with the issue of whether such injuries are covered by the applicable Arizona Act.

All parties agree that this issue is controlled by A.R.S. § 23–904, subsec. A (1956), which in pertinent part provides:

"A. If a workman *who has been hired* . . . in this state receives a personal injury . . ., he shall be entitled to compensation according to the law of this state even though the injury was received without the state." (Emphasis added.)

As regards the vital issue of where the hiring of Mr. Hobbs took place, petitioners contend that the telephone conversation occurring in the early part of January, 1970, constituted a unilateral contract which did not become binding or enforceable until Mr. Hobbs appeared for work in El Centro, California, and thus the hiring occurred in California. On the other hand, respondent contends that this same telephone conversation resulted in a bilateral contract which was binding and enforceable at the time it was made in Arizona and thus the hiring occurred in Arizona within the purview of A.R.S. § 23–904.

The Arizona Supreme Court has recently, in the case of Knack v. Industrial Commission, 108 Ariz. 545, 503 P.2d 373 (1972), had occasion to discuss both A.R.S. § 23–904 and the unilateral-bilateral contract dichotomy. The court stated:

"If it were possible to say the testimony is capable of a different interpretation [whether a unilateral or bilateral contract was formed], § 31 of the Restatement of Contracts would govern:

'In case of doubt it is presumed that an offer invites the formation of a bilateral contract by an acceptance amounting in effect to a promise by the offeree to perform what the offer requests, rather than the formation of one or more unilateral contracts by actual performance on the part of the offeree.'

"As comment 'a' thereto states, an interpretation is favored that a bilateral contract is proposed, since it immediately and fully protects both parties. And illustration '1' further clarifies the text statement.

'1. A says to B: "If you will work in my garden next week, I will give you $5 a day." B says "I'll do it." There is a bilateral contract.' " 503 P.2d at 376.

Applying these principles to this case we are of the opinion that there is sufficient evidence before the Commission to find that a bilateral contract of hire was created in Arizona when Mr. Hobbs advised City Products that he would accept employment in El Centro, California. In addition to the testimony of Mr. Hobbs previously recited in this opinion, Mr. John Harmon who called Mr. Hobbs on behalf of City Products, while being unable to recall the specific conversation with Mr. Hobbs, testified:

"Q. What would be a typical conversation, say between yourself and an employee when you have some information

that a season is about to start, say in El Centro, can you give us an idea for the record?

"A. I would tell him that we would expect to start the El Centro plant December 25th.

"Q. What would be a usual response?

"A. Well, let me go on further. You usually start a plant off with a skeleton crew, so it depends on who I'm talking to. If I'm actually talking to·a man that I am expecting to be there December 25th, then I tell him, 'We are going to start the El Centro plant December 25th, and since you are first on the seniority list, be there.' And he would say fine, or that he was not going to be there for some reason, but most always he will tell you, 'That's fine.'

"Q. And you would like to know that because you want to make sure you have someone there when the season begins, right?

"A. Yes."

This testimony is capable of being interpreted as supplying consideration for a bilateral contract—assurance on behalf of the employer that its employment needs have been fulfilled and a corresponding assurance that the employee has a job and that his seniority rights under the union contract shall be protected. "A promise for a promise is adequate legal consideration to support a contract." Knack v. Industrial Commission, *supra.* 503 P.2d at 376.

From the foregoing, we hold that the Commission properly determined that a contract of hire was consummated within the state of Arizona and that, therefore, the provisions of A.R.S. § 23–904 came into effect giving to the Arizona Industrial Commission jurisdiction over Mr. Hobbs' claim.

■ One additional comment should be made concerning the effect, if any, of Mr. Hobbs claiming and receiving compensation under the laws of the state of California. California may properly compen-

sate injuries occurring within its jurisdiction, although those injuries occurred to a workman hired in another state and by reason of that fact may be entitled to compensation from that hiring state. Pacific Employers Ins. Co. v. Industrial Accident Comm. of California, 306 U.S. 493, 59 S. Ct. 629, 83 L.Ed. 940 (1939). Likewise, the hiring state may compensate those same injuries, even though compensation has been awarded by the state where the injury occurred. Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S. Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179 (1947). However, to avoid double recovery for the same injury, if payments were made to Hobbs under the California award, credit must be allowed for those payments under any award entered in Arizona. *See,* Industrial Commission of Wisconsin v. McCartin, *supra.*

For the foregoing reasons, the award of the Industrial Commission is affirmed.

EUBANK, P. J., and HAIRE, J., concur.