634 P.2d 984

**FRANK E. BASIL, INC., Saudi Maintenance Co., Ltd., Petitioner Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Larry Giles, Respondent Employee.**

**No. 1 CA–IC 2312.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 18, 1981.

Rehearing Denied Oct. 2, 1981.

Review Denied Oct. 20, 1981.

Law Offices of Chris T. Johnson, P.C. by Chris T. Johnson, Phoenix, for petitioner employer.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jerome & Gibson, P.C. by Don A. Fendon, Phoenix, for respondent employee.

## OPINION

FROEB, Judge.

Larry Giles, a resident of Arizona, was hired by Saudi Maintenance Co., Ltd., to work as a water well foreman in the Kingdom of Saudi Arabia. While on the job there, he was injured and thereafter filed a claim for workmen's compensation in Arizona. Saudi Maintenance Co., unsuccessfully contested the jurisdiction of the Industrial Commission over the claim and now brings this review in the court of appeals raising two basic questions: (1) whether Giles was hired in Arizona, and (2) whether the Industrial Commission has the power to subject Saudi Maintenance Co., to its jurisdiction since it had no contact with the State of Arizona other than the steps it took to hire Giles. The facts, viewed in a light most favorable to sustaining the award, *Home Insurance Co. v. Industrial Commission*, 123 Ariz. 348, 599 P.2d 801 (1979), are as follows.

In January 1978, petitioner Frank E. Basil, Inc. (Basil), a representative of Saudi Maintenance Co., Ltd. (SIYANCO), placed an advertisement in the Arizona Republic seeking an employee for a position in Saudi Arabia as a water well maintenance supervisor with SIYANCO. Respondent employee Giles responded to the ad by sending his resume to the Basil office in Washington, D.C. He then called the Washington, D.C., office and an interview was arranged to take place in the Adams Hotel in Phoenix. Giles was interviewed in March of 1978 and was offered employment subject to the following contingencies: (1) that he pass a physical examination; (2) that he obtain a United States passport; and (3) that he obtain a visa to enter the Kingdom of Saudi Arabia. After all three contingencies were satisfied, Basil furnished an airline ticket to Giles who left Phoenix on the night of March 27th, arrived in Washington, D.C., on March 28th, signed a formal written contract with SIYANCO that day, and proceeded immediately by air to Saudi Arabia. After Giles sustained his injury while work-

ing in Saudi Arabia, he filed a claim with the Industrial Commission in Arizona on September 8, 1978, which was denied. He then requested a hearing on the matter and SIYANCO appeared specially to contest jurisdiction. After a hearing and the submission of legal memoranda, the Commission found that Giles had been hired in Arizona and that it had jurisdiction to consider the claim on the merits.

## WAS THE EMPLOYEE HIRED IN ARIZONA?

■ The relevant statute is A.R.S. § 23–904(A) which provides, in part:

If a workman who has been hired . . . in this state receives a personal injury arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state even though the injury was received without the state.

The policy of the statute is to protect residents of Arizona working elsewhere who may return after injuries or whose families may reside in Arizona. *Knack v. Industrial Commission*, 108 Ariz. 545, 503 P.2d 373 (1972).

■ There have been a number of decisions dealing with whether a worker was hired in Arizona. *See, e. g., Ryan v. Industrial Commission*, 127 Ariz. 607, 623 P.2d 37 (1981); *Pauley v. Industrial Commission*, 109 Ariz. 298, 508 P.2d 1160 (1973); *Knack v. Industrial Commission*, 108 Ariz. 545, 503 P.2d 373 (1972); *Baker v. Industrial Commission*, 92 Ariz. 198, 375 P.2d 556 (1962); *City Products Corp. v. Industrial Commission*, 19 Ariz.App. 286, 506 P.2d 1071 (1973). As a general proposition, Arizona decisions on this issue have looked to where and when the contract of hire was made. *Ryan* is a recent example. In that case, we upheld an Industrial Commission finding that the contract of hire was not entered into until the worker arrived in Oklahoma and completed several final steps before his employment began. Although the employer had advertised in Arizona and certain preliminary steps occurred here, we found that the hiring took place out of Arizona.

*Knack* is an example, on the other hand, of where the steps taken by the employer to hire an Arizona resident to work in California resulted in the contract of hire being made in Arizona. *City Products* follows *Knack* in holding that the hiring contract for work in California was entered into in Arizona. There are other cases, but discussion of them is not warranted. Suffice it to say that the principle of law uniformly applied by those cases is that the place where the employee was hired is the place where the contract was entered into.

As a preface to considering where and when the employment relationship in this case arose, we point out that our concern is when an enforceable contract of hire occurred within the meaning of A.R.S. § 23–904(A) so as to invoke Arizona workmen's compensation laws. This is somewhat different from a consideration of the written agreement of the parties as the ultimate expression of their mutual promises and undertakings. Simply put, if an enforceable oral contract of hire occurred in Arizona, A.R.S. § 23–904(A) is invoked notwithstanding the fact that the parties later memorialized their contract in a written agreement outside of Arizona. With this in mind, we turn to the facts.

■ When Giles was interviewed in Phoenix by representatives of Basil, he was told that he definitely would be hired if he passed the physical examination and obtained a passport and visa. This he did. The representative of Basil testified at the Commission hearing as follows:

QUESTION: At the time Giles left the State of Arizona, okay, was there an understanding that he had a job between Siyanco and Mr. Giles?

. . . .

ANSWER: Oh yes. We agreed to hire him. He wouldn't have traveled otherwise.

. . . .

He satisfied all the contingencies. He wouldn't have left Arizona without them.

The administrative law judge found from the evidence that the hiring was "consum-

mated" in Arizona. We agree. The contract of hire occurred when the conditions precedent to the contract were satisfied. There is no evidence that execution of a written contract in Washington was a prerequisite to an enforceable employment relationship between Giles and SIYANCO. A written contract was, as the evidence indicates, a prerequisite to performance of the employment contract and a requirement which had to be satisfied before Giles left the United States and traveled to Saudi Arabia to work.

The question in this case is complicated by the fact that hiring steps taking place in Arizona were followed by the execution of a written agreement in Washington, D.C. We have analyzed the uncontroverted evidence to support an enforceable oral contract of hire in Arizona, made prior to the formalizing of the employment by a written agreement in Washington, D.C. We hold that the oral contract became merged into the written agreement in accordance with the provisions of the latter, which states, "This agreement constitutes the entire agreement and understanding between the Company and the Employee as to his employment and cancels and supercedes any and all prior undertakings, promises or agreements, written or oral, by or between them as to such employment."

The written agreement entered into by the parties in Washington is by itself evidence that Giles was hired in Arizona. Under the heading "General Conditions of Employment," the agreement states that the "point of hire" is "Phoenix, Arizona." Although there was testimony at the hearing suggesting that "point of hire" as used in the written agreement related to matters other than where the contract for hire was entered into, the testimony did not compel a finding by the hearing judge that the employment relationship arose in Washington, D.C. Moreover, another provision of the written agreement stated, "The Starting Date of Employment has been fixed on the assumption that the Employee will depart from the Point of Hire on that date. . . . If the Employee departs from the Point of Hire on a different date . . . the Starting

Date of Employment and this Agreement shall be correspondingly changed." The first page of the written agreement recited the starting date of employment as March 28, 1978 (the date the agreement was signed in Washington). Since Giles in fact left Phoenix on March 27, 1978, his starting date of employment, by operation of the quoted provision of the agreement, was March 27, 1978. Giles was employed, therefore, when he left Phoenix, the point being that the written agreement itself is additional evidence that Giles was hired before he left Arizona.

## DOES THE INDUSTRIAL COMMISSION OF ARIZONA HAVE JURISDICTION OVER SAUDI ARABIA MAINTENANCE CO., LTD.?

■ SIYANCO contends that since it does no business in and has no contacts with the State of Arizona, there is no basis for the Commission to acquire jurisdiction over it and render against it an award for workmen's compensation. SIYANCO also argues that it is denied due process because personal service cannot be obtained and it is therefore denied notice and an opportunity to be heard. In presenting this argument, SIYANCO assumes, arguendo, that Giles was hired in Arizona, but contends that there are lacking sufficient "minimum contacts" with Arizona to justify jurisdiction by the Industrial Commission. We disagree.

■ The due process clause of the fourteenth amendment of the United States Constitution requires that a defendant have minimum contacts with the forum state so that requiring him to defend an action will not violate traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 335 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Arizona adopted the minimum contacts rule when the Arizona Supreme Court adopted Rule of Civil Procedure 4(e)(2). Most recently, the United States Supreme Court has said that

the minimum contacts requirement includes the notion of purposeful activity in the forum state which the defendant ought reasonably anticipate could result in a suit there against him. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This was applied by the Arizona Supreme Court in *Northern Propane Gas Co. v. Kipps*, 127 Ariz. 522, 622 P.2d 469 (1980).

We hold in the present case that SIYANCO has had sufficient minimum contact with the State of Arizona to be subjected to the jurisdiction of the Industrial Commission. We reach this conclusion in light of our determination that a contract of hire was entered into in Arizona between Giles and SIYANCO. Basil, as a representative of SIYANCO, advertised and interviewed in Arizona to fill an open employment position with SIYANCO. This was a sufficient contact with Arizona to meet the requirements of due process. Because the contact dealt directly with employment, SIYANCO must be held to have reasonably anticipated the possibility that it might be a party to a workmen's compensation proceeding before the Arizona Industrial Commission. A.R.S. § 23–904(A) is plain notice that the hiring of an employee in Arizona can lead to such a possiblity if a work-related injury occurs.

### IS FRANK E. BASIL, INC., A PROPER PARTY TO THE INDUSTRIAL COMMISSION PROCEEDING?

■ SIYANCO contends that the award must be set aside because Frank E. Basil, Inc., is incorrectly named in the caption of the proceedings as employer although no claim has been filed against it. While the award under review dealt with the other issues previously discussed, it was silent as to the status of Basil in the proceedings. SIYANCO argues that Basil should have been dismissed from the case. Respondent employee opposes this on somewhat vague grounds that Basil might be liable as employer because *it acted as agent for* SIYANCO. We do not reach the merits of this argument, however, since it was not ruled upon by the Commission. The Com-

mission proceedings and consequently this appellate review arose from *SIYANCO's* motion to dismiss by special appearance. The only issue raised by the motion related to the question of jurisdiction over SIYANCO. It was therefore proper that the award made no finding or decision concerning the status of Basil in the case. The matter remains open for adjudication by the Commission at a later date if that becomes necessary.

Award affirmed.

WREN, C. J., and O'CONNOR, J., concur.