ESPINOSA, Judge:
¶ 1 Jane Sherring appeals the determination of the Administrative Law Judge ("ALJ") that she was not an employee at the time of her injury and therefore was not entitled to workers' compensation. We affirm the ALJ's award.
Factual and Procedural Background
¶ 2 "We view the evidence in the light most favorable to affirming the Industrial Commission's findings and award." City of Tucson v. Indus. Comm'n , 236 Ariz. 52, ¶ 2, 335 P.3d 1131 (App. 2014). On January 4, 2017, Sherring accepted the City of Tucson's conditional offer of employment to be a Parking Service Agent. The City's offer stated that it was contingent upon "successful completion of all paperwork, background investigation, reference checks, pre-employment testing, and approval from the Equal Opportunity Programs Division & Human Resources."
¶ 3 By January 13, the date on which Sherring went to a medical center for a pre-employment physical exam, she had completed most, if not all, of the other requirements.[1] As part of the exam, a medical assistant instructed Sherring to lift a box containing "50-pound free weights" and place it on a shelf. According to Sherring, the box was "so large that [it] hit [her] knee, twisted [her] left knee" while she was lifting it, but she nevertheless was able to lift it and place it on the shelf "[t]hree or four" times. The lift test was the last part of the physical, and while Sherring was checking out, the doctor told her she had "passed" the exam.
¶ 4 Following the physical examination, Sherring notified the City she had completed it and was informed where to report on her first day of work.[2] However, she never actually began work for the City. According to Sherring, "when [she] left [the] appointment [her] knee was hurting pretty bad and [she] had some large bruises on the inside of [her] thigh." Although she initially believed "it would kind of go away because some things just take some time to heal," it "got worse" and, on February 2, she informed the City of the injury and asked if she could "go back and see the doctor [from the pre-employment physical] to have it checked" before starting *1235 work the following Monday. Her start date was pushed back a couple of times, but ultimately the City denied her request for a reasonable accommodation and rescinded its employment offer based on her inability "to perform the essential functions of a Parking Service Agent."
¶ 5 On February 3, 2017, Sherring saw an emergency room doctor regarding her knee, and on February 10, filed a "worker's report of injury" with the Industrial Commission of Arizona ("ICA"). The City denied the claim on the basis that Sherring was "not an Employee of City of Tucson," and she requested a hearing before an ALJ. After the hearing, the ALJ dismissed the claim upon finding Sherring "did not sustain a compensable injury on January 13, 2017 as she was not an employee of the [City] on that date." The ALJ affirmed the award upon review, and Sherring brought this statutory special action. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2) and 23-951.
Discussion
¶ 6 "In reviewing ICA findings and awards, we defer to the ALJ's factual findings but review questions of law de novo." Landon v. Indus. Comm'n , 240 Ariz. 21, ¶ 9, 375 P.3d 86 (App. 2016). Sherring raises two arguments on appeal: First, she disputes the ALJ's conclusion that she was not an employee of the City at the time the injury occurred. Second, she urges us to find entitlement to workers' compensation as a matter of public policy when a person is injured in a pre-employment physical that is a condition of employment. We address each argument in turn.
Employment Status
¶ 7 Sherring contends the ALJ erred in dismissing her claim because under contract principles she "was an employee of the City for purposes of workers' compensation benefits." In support she cites Tabler v. Industrial Commission , 202 Ariz. 518, ¶ 8, 47 P.3d 1156 (App. 2002), which recognized that "[f]or an enforceable contract to exist, there must be an offer, acceptance, and consideration." According to Sherring, in her case, "[t]here was a contingent offer, there was acceptance, and once the contingencies were met by Sherring, the contract of employment was complete."
¶ 8 Sherring's injury, however, did not occur after she had met all the contingencies of the offer. Rather, the injury occurred during the pre-employment physical, and as the ALJ found below, Sherring "was not yet an employee on the date of her exam."[3] Sherring relies on Pauley v. Industrial Commission , 109 Ariz. 298, 300, 508 P.2d 1160 (1973), Knack v. Industrial Commission , 108 Ariz. 545, 546, 503 P.2d 373 (1972), and City Products Corp. v. Industrial Commission , 19 Ariz. App. 286, 287-88, 506 P.2d 1071 (1973), which all addressed when the claimants were hired in the context of whether they were hired in Arizona, but which also all involved injuries that clearly occurred after the claimants began work. None of these cases is applicable here because none involved a contingent offer of employment. Moreover, Sherring herself admits "a bilateral contract was formed after [she] attended and passed the physical," apparently ignoring that her claimed injury occurred during the physical, not after she passed it.
¶ 9 Additionally, we agree with the City and the ALJ that this case is more like Ryan v. Industrial Commission , 127 Ariz. 607, 623 P.2d 37 (App. 1981), than the cases Sherring cites. In Ryan , this court determined the claimant was hired in Oklahoma because, although he had contacted the employer and received an application in Arizona, he had traveled to Oklahoma to deliver his application and "take a written test required by the Department of Transportation, a physical examination, and a driving test." 127 Ariz. at 608-09, 623 P.2d 37. While Sherring had a contingent job offer and Ryan did not, both needed to complete a number of requirements before they were in fact hired. And Ryan cited the *1236 Restatement (First) of Contracts § 74 (1932), which provides, "A contract is made at the time when the last act necessary for its formation is done." See 127 Ariz. at 609, 623 P.2d 37. All parties here agree the injury occurred before the physical was completed.
¶ 10 In her reply brief, Sherring cites A.R.S. § 23-1061 to argue that because her injury "did not manifest itself until sometime after the physical," "she did not have a viable compensation claim" until after "she had completed the contingencies of the City's offer and the contract of hire was complete." Section 23-1061(A) establishes the workers' compensation statute of limitations, allowing a claimant to file up to one year after "the injury becomes manifest" or the claimant knows or should know she "has sustained a compensable injury." That the statute of limitations may not start to run on the date of the injury, however, and the injury may not be immediately "compensable," does not alter when the injury occurred or give the claimant more time to become an employee after sustaining a pre-employment injury. Cf. A.R.S. § 23-1021 (workers' compensation available for employee "who is injured ... by accident arising out of and in the course of his employment").
Pre-Employment Physical
¶ 11 Sherring next argues that, even if an employment contract was not completed at the time of her injury, she should nevertheless be considered an employee because of "Arizona's policies on workers' compensation." She relies, however, on an out-of-state case, Laeng v. Workmen's Compensation Appeals Board , 6 Cal.3d 771, 100 Cal.Rptr. 377, 494 P.2d 1 (1972). There, California's supreme court considered whether the claimant was entitled to workers' compensation when he had been injured "[w]hile participating in the 'obstacle course' phase of a physical agility test conducted by the City of Covina as part of a 'tryout' competition for the position of 'refuse crew worker.' " Id. , 100 Cal.Rptr. 377, 494 P.2d at 2. The court determined that Laeng was so entitled, concluding the agility test was a "tryout" "designed to correlate with the skills, and, therefore, the risks, that would be involved in the ultimate employment position," sufficiently similar to "on-the-job trial performance[s]" found compensable in other jurisdictions. Id., 100 Cal.Rptr. 377, 494 P.2d at 7-9.
¶ 12 In response, the City cites Gebhard v. Dixie Carbonic , 261 Neb. 715, 625 N.W.2d 207, 210 (2001), in which Nebraska's supreme court declined "to adopt a rule that would make injuries [that] occur during a prehiring physical examination compensable under the Nebraska Workers' Compensation Act, even when passing the physical is a precondition to employment." The facts of that case are very similar to those at hand. Gebhard was offered employment on the condition she "pass a drug test, pass a lower back physical examination, and complete a job orientation." Id. at 209. During the physical, Gebhard injured her back while "lift[ing] a box weighing 60 pounds" and was subsequently told she had failed the exam. Id. The court found Gebhard's injury non-compensable based on the "basic principle underlying the Nebraska Workers' Compensation Act ... that only employees are entitled to workers' compensation benefits." Id. at 210, 213.
¶ 13 Sherring attempts to distinguish Gebhard , noting "the applicant there did not complete the required contingencies to finalize the employment contract" whereas "Sherring did pass the physical and therefore completed all of the contingencies." But we have already rejected Sherring's argument that she was an employee during the physical because she subsequently passed the exam. Moreover, from a public policy perspective, it would be incongruous to allow workers' compensation for pre-employment exam injuries that are not so severe as to prevent the applicant from passing but to disallow compensation for injuries that result in a failing score.
¶ 14 More importantly, the public policy underscoring the Nebraska court's refusal to extend workers' compensation to pre-employment physical exams finds more in common with Arizona's statutes than the California court's extension of workers' compensation rights. Arizona's definition of "[e]mployee" for workers' compensation purposes, someone "in the service of" the employer "whether by election, appointment or contract of hire," A.R.S. § 23-901(6)(a), is nearly identical to that considered in Gebhard , see 625 N.W.2d at 210-11. The relevant definition in Laeng , however, carried a presumption of *1237 employee status for any person who rendered service to another. See 100 Cal.Rptr. 377, 494 P.2d at 4. In contrast, the Gebhard court was "guided ... by the language of [the statute], which requires that a person be under a contract of hire in order to be considered an employee." 625 N.W.2d at 212. Our statute and the principle that public policy is determined by the legislature, not the courts, compel the same result here. See Quiroz v. ALCOA Inc. , 243 Ariz. 560, ¶ 19, 416 P.3d 824 (2018) (matters of public policy generally within purview of legislature, not judiciary).
¶ 15 Even considering the "service" aspect of the employee definition, Laeng does not support a broader interpretation of Arizona law. In discussing Laeng and the tryout cases cited there, Sherring asserts that "[t]he critical points in determining service are that the workers are performing a service for the employer[,] the risk of injury is inherent in the work," and "the services provided by the worker are the very services provided by the employer." The court in Laeng noted, however, that "the value of any specialized 'tryout' test generally lies in its ability to reproduce, or highlight, actual working conditions." 100 Cal.Rptr. 377, 494 P.2d at 8-9. A pre-employment medical lifting test does not have the same level of correlation with the actual work that Sherring was to perform, and cannot be said to have "occurred in the service of the employer" to the same extent as the Laeng agility test, which not only was likened to an "on-the-job trial performance," but as the ALJ noted in her decision upon hearing, was conducted on the employer's premises and supervised by city employees. Laeng , 100 Cal.Rptr. 377, 494 P.2d at 3, 8-9 ; see also Rahla v. Med. Ctr. at Bowling Green , 483 S.W.3d 360, 362-63 (Ky. 2016) (concluding claimants are not in employer's "service" during pre-employment medical screenings even though Kentucky has otherwise "endorsed the try-out period approach").
Disposition
¶ 16 For the foregoing reasons, the ALJ's award is affirmed.

The City disputes that Sherring had completed the other requirements, asserting there were additional contingencies involving first-day "on-boarding" paperwork and administrative tasks.

Sherring testified she received a start date on January 13, before completing the pre-employment physical, but the record contains a January 19 email from the City congratulating her on successfully completing the prerequisites and asking her to contact the City "to discuss a start date." Ultimately, this issue is not dispositive and, in any event, February 6, 2017, was selected as Sherring's start date.

The ALJ also concluded that "although Ms. Sherring had an expectation of being employed when she showed up for work at the City, no contract of employment was made until she arrived at work on her first day." Because the injury occurred before completion of the pre-employment physical, however, we need not decide whether Sherring became an employee for workers' compensation purposes immediately after passing the exam or would only have become an employee once she started work.