# THOMAS *v.* WASHINGTON GAS LIGHT CO. ET AL.

No. 79–116. Argued March 19, 1980—Decided June 27, 1980

STEVENS, J., announced the judgment of the Court and delivered an opinion, in which BRENNAN, STEWART, and BLACKMUN, JJ., joined. WHITE, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and POWELL, J., joined, *post*, p. 286. REHNQUIST, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 290.

*James F. Green* argued the cause for petitioner. With him on the briefs were *Martin E. Gerel, James A. Mannino,* and *Mark L. Schaffer.*

*Kevin J. Baldwin* argued the cause for respondent Washington Gas Light Co. With him on the brief were *Lewis Carroll, Carl W. Belcher, Henry F. Krautwurst,* and *Douglas V. Pope. Alan I. Horowitz* argued the cause *pro hac vice* for the federal respondent. With him on the briefs were *Solicitor General McCree, Deputy Solicitor General Geller, Laurie M. Streeter,* and *Joshua T. Gillelan II.*

MR. JUSTICE STEVENS announced the judgment of the Court and delivered an opinion, in which MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE BLACKMUN joined.

Petitioner received an award of disability benefits under the Virginia Workmen's Compensation Act. The question

presented is whether the obligation of the District of Columbia to give full faith and credit to that award [1] bars a supplemental award under the District's Workmen's Compensation Act.[2]

Petitioner is a resident of the District of Columbia and was hired in the District of Columbia. During the year that he was employed by respondent, he worked primarily in the District but also worked in Virginia and Maryland. He sustained a back injury while at work in Arlington, Va., on January 22, 1971. Two weeks later he entered into an "Industrial Commission of Virginia Memorandum of Agreement as to Payment of Compensation" providing for benefits of $62 per week. Several weeks later the Virginia Industrial Commission approved the agreement and issued its award directing that payments continue "during incapacity," subject to various contingencies and changes set forth in the Virginia statute. App. 49.

In 1974, petitioner notified the Department of Labor of his

---

[1] United States Constitution, Art. IV, § 1:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Title 28 U. S. C. § 1738 provides, in part:

"The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

. . . . .

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."

[2] The District of Columbia Workmen's Compensation Act, D. C. Code §§ 501–502 (1968), adopts the terms of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. § 901 et seq. The program is administered by the United States Department of Labor.

intention to seek compensation under the District of Columbia Act. Respondent opposed the claim primarily [3] on the ground that since, as a matter of Virginia law, the Virginia award excluded any other recovery "at common law or otherwise" on account of the injury in Virginia,[4] the District of Columbia's obligation to give that award full faith and credit precluded a second, supplemental award in the District.

The Administrative Law Judge agreed with respondent that the Virginia award must be given res judicata effect in the District to the extent that it was res judicata in Virginia.[5] He held, however, that the Virginia award, by its terms, did not preclude a further award of compensation in Virginia.[6]

---

[3] Respondent also contended that the claim was barred by limitations. The Administrative Law Judge ruled, however, that respondent's failure to file the report of injury required by the District of Columbia Act had tolled the statute and made respondent automatically liable for a 10% penalty. Respondent also argues in this Court that the LHWCA forbade the granting of an award where compensation could have been obtained under a state workmen's compensation program. Since the Court of Appeals passed on neither of these statutory arguments, they remain open on remand.

[4] Virginia Code § 65.1–40 (1980) provides:

"Employee's rights under Act exclude all others.—The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

[5] "Accordingly, it is concluded that, in the instant matter, Claimant's award under the Virginia compensation law must be given such faith and credit in the District as it is given in Virginia; that, to the extent that the Virginia award is res judicata in Virginia, it is res judicata in the District." App. 42.

[6] "The award did not effect a final settlement of the rights and liabilities of the parties. Rather, by its terms, it contemplated further awards.

. . . . .

"In view of the foregoing, it is determined that, because the Virginia award was not a bar to further recovery of compensation in Virginia, it

Moreover, he construed the statutory prohibition against additional recovery "at common law or otherwise" as merely covering "common law and other remedies under Virginia law." [7] After the taking of medical evidence, petitioner was awarded permanent total disability benefits payable from the date of his injury with a credit for the amounts previously paid under the Virginia award. *Id.*, at 31.

The Benefits Review Board upheld the award. 9 BRBS 760 (1978). Its order, however, was reversed by the United States Court of Appeals for the Fourth Circuit, judgment order reported at 598 F. 2d 617,[8] which squarely held that a "second and separate proceeding in another jurisdiction upon the same injury after a prior recovery in another State [is] precluded by the Full Faith and Credit Clause." [9] We granted certiorari, 444 U. S. 962, and now reverse.

## I

Respondent contends that the District of Columbia was without power to award petitioner additional compensation because of the Full Faith and Credit Clause of the Constitution or, more precisely, because of the federal statute implementing that Clause.[10] An analysis of this contention must

---

was not, under the full faith and credit concept, *res judicata* as a bar to further recovery of compensation under District law." *Id.*, at 46–47.

[7] *Id.*, at 48. He added that the exclusive-remedy provisions "were not designed for extraterritorial extension to other sovereign jurisdictions. They do not preclude jurisdiction under District law." *Ibid.*

[8] See 33 U. S. C. § 921 (c), which provides for review of decisions of the Benefits Review Board "in the United States court of appeals for the circuit in which the injury occurred. . . ."

[9] The quoted language is from the Fourth Circuit's opinion in the similar case of *Pettus* v. *American Airlines, Inc.*, 587 F. 2d 627, 630 (1978), cert. denied, 444 U. S. 883. In this case the Court of Appeals merely issued a brief unpublished order citing *Pettus*. App. 2a.

[10] The statute places on courts in the District of Columbia the same obligation to respect state judgments as is imposed on the courts of the several States. See n. 1, *supra*.

begin with two decisions from the 1940's that are almost directly on point: *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, and *Industrial Comm'n of Wisconsin* v. *McCartin,* 330 U. S. 622.

In *Magnolia,* a case relied on heavily both by respondent and the Court of Appeals, the employer hired a Louisiana worker in Louisiana. The employee was later injured during the course of his employment in Texas. A tenuous majority [11] held that Louisiana was not permitted to award the injured worker supplementary compensation under the Louisiana Act after he had already obtained a recovery from the Texas Industrial Accident Board:

> "Respondent was free to pursue his remedy in either state but, having chosen to seek it in Texas, where the award was res judicata, the full faith and credit clause

---

[11] Four Members of the Court—Justices Black, Douglas, Murphy, and Rutledge—dissented, expressing the opinion that the holding was not supported by precedent and did not accord proper respect to the States' interests in implementing their policies of compensating injured workmen.

Mr. Justice Jackson concurred in Mr. Chief Justice Stone's opinion for the Court, but only because he felt bound by *Williams* v. *North Carolina,* 317 U. S. 287, a decision from which he vigorously dissented. *Id.,* at 311. In that case, the Court held that North Carolina had to respect an *ex parte* divorce decree obtained in Nevada in a bigamy prosecution of a North Carolina resident. (It was assumed for purposes of decision that the petitioner was a bona fide domiciliary of Nevada at the time of the divorce, *id.,* at 302.) In his concurring opinion in *Magnolia,* Mr. Justice Jackson explained that he was "unable to see how Louisiana can be constitutionally free to apply its own workmen's compensation law to its citizens despite a previous adjudication in another state if North Carolina was not free to apply its own matrimonial policy to its own citizens after judgment on the subject in Nevada." 320 U. S., at 446.

Mr. Justice Douglas, author of the opinion for the Court in *Williams,* pointed out, in one of the two dissents filed in the *Magnolia* case, that as compared with the dual workmen's compensation award problem then before the Court, "questions of status, *i. e.,* marital capacity, involve conflicts between the policies of two States which are quite irreconcilable." 320 U. S., at 447.

precludes him from again seeking a remedy in Louisiana upon the same grounds." 320 U. S., at 444.

Little more than three years later, the Court severely curtailed the impact of *Magnolia.* In *McCartin,* the employer and the worker both resided in Illinois and entered into an employment contract there for work to be performed in Wisconsin. The employee was injured in the course of that employment. He initially filed a claim with the Industrial Commission of Wisconsin. Prior to this Court's decision in *Magnolia,* the Wisconsin Commission informed him that under Wisconsin law, he could proceed under the Illinois Workmen's Compensation Act, and then claim compensation under the Wisconsin Act, with credit to be given for any payments made under the Illinois Act. Thereafter, the employer and the employee executed a contract for payment of a specific sum in full settlement of the employee's right under Illinois law. The contract expressly provided, however, that it would " 'not affect any rights that applicant may have under the Workmen's Compensation Act of the State of Wisconsin.' " 330 U. S., at 624. The employee then obtained a supplemental award from the Wisconsin Industrial Commission; but the Wisconsin state courts vacated it under felt compulsion of the intervening decision in *Magnolia.*

This Court reversed, holding without dissent [12] that *Magnolia* was not controlling. Although the Court could have relied exclusively on the contract provision reserving the employee's rights under Wisconsin law to distinguish the case from *Magnolia,* Mr. Justice Murphy's opinion provided a significantly different ground for the Court's holding when it said:

> "[T]he reservation spells out what we believe to be implicit in [the Illinois Workmen's Compensation] Act— namely, that an . . . award of the type here involved does not foreclose an additional award under the laws of

---

[12] Mr. Justice Rutledge concurred only in the result.

another state. And in the setting of this case, that fact is of decisive significance." 330 U. S., at 630.

Earlier in the opinion, the Court had stated that "[o]nly some unmistakable language by a state legislature or judiciary would warrant our accepting . . . a construction" that a workmen's compensation statute "is designed to preclude any recovery by proceedings brought in another state." *Id.*, at 627–628. The Illinois statute, which the Court held not to contain the "unmistakable language" required to preclude a supplemental award in Wisconsin, broadly provided:

" 'No common law or statutory right to recover damages for injury or death sustained by any employe while engaged in the line of his duty as such employe, other than the compensation herein provided, shall be available to any employe who is covered by the provisions of this act, . . .' " *Id.*, at 627.

The Virginia Workmen's Compensation Act's exclusive-remedy provision, see n. 4, *supra,* is not exactly the same as Illinois'; but it contains no "unmistakable language" directed at precluding a supplemental compensation award in another State that was not also in the Illinois Act. Consequently, *McCartin* by its terms, rather than the earlier *Magnolia* decision, is controlling as between the two precedents. Nevertheless, the fact that we find ourselves comparing the language of two state statutes, neither of which has been construed by the highest court of either State, in an attempt to resolve an issue arising under the Full Faith and Credit Clause makes us pause to inquire whether there is a fundamental flaw in our analysis of this federal question.

## II

We cannot fail to observe that, in the Court's haste to retreat from *Magnolia,*[13] it fashioned a rule that clashes with

---

[13] *Magnolia* had not been well received. See Cheatham, Res Judicata

normally accepted full faith and credit principles. It has long been the law that "the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced." *Hampton* v. *McConnel,* 3 Wheat. 234, 235 (Marshall, C. J.,). See also *Mills* v. *Duryee,* 7 Cranch 481, 484 (Story, J.). This rule, if not compelled by the Full Faith and Credit Clause itself, see n. 18, *infra,* is surely required by 28 U. S. C. § 1738, which provides that the "Acts, records and judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State . . . from which they are taken." See n. 1, *supra.*[14] Thus, in effect, by virtue of the full faith and credit obligations of the several States, a State is permitted to determine the extraterritorial effect of its judgments; but it may only do so indirectly, by prescribing the effect of its judgments within the State.

The *McCartin* rule, however, focusing as it does on the extraterritorial intent of the rendering State, is fundamentally different. It authorizes a State, by drafting or construing its legislation in "unmistakable language," directly to determine the extraterritorial effect of its workmen's compensation awards. An authorization to a state legislature of this character is inconsistent with the rule established in *Pacific Em-*

---

and the Full Faith and Credit Clause: Magnolia Petroleum Co. v. Hunt, 44 Colum. L. Rev. 330, 344–346 (1944) (hereinafter Cheatham); Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1210, 1227–1230 (1946) (hereinafter Freund); Wolkin, Workmen's Compensation Award—Commonplace or Anomaly in Full Faith and Credit Pattern?, 92 U. Pa. L. Rev. 401, 405–411 (1944) (hereinafter Wolkin); Note, 23 Ind. L. J. 214 (1948); Note, 18 Tulane L. Rev. 509 (1944); Recent Cases, 12 Geo. Wash. L. Rev. 487 (1944).

[14] That statute, insofar as it is relevant here, reads exactly as it did when the first Congress passed it in 1790. See 1 Stat. 122.

*ployers Ins. Co.* v. *Industrial Accident Comm'n,* 306 U. S. 493, 502:

> "This Court must determine for itself how far the full faith and credit clause compels the qualification or denial of rights asserted under the laws of one state, that of the forum, by the statute of another state."

It follows inescapably that the *McCartin* "unmistakable language" rule represents an unwarranted delegation to the States of this Court's responsibility for the final arbitration of full faith and credit questions.[15] The Full Faith and

---

[15] See *Magnolia,* 320 U. S., at 438; *Williams v. North Carolina,* 317 U. S., at 302; *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532, 547; Reese & Johnson, The Scope of Full Faith and Credit to Judgments, 49 Colum. L. Rev. 153, 161–162 (1949) (hereinafter Reese & Johnson):

"Full faith and credit is a national policy, not a state policy. Its purpose is not merely to demand respect from one state for another, but rather to give us the benefits of a unified nation by altering the status of otherwise 'independent, sovereign states.' Hence it is for federal law, not state law, to prescribe the measure of credit which one state shall give to another's judgment. In this regard, it is interesting to note that in dealing with full faith and credit to statutes the Supreme Court in recent years has accorded no weight to language which purported to give a particular statute extraterritorial effect.[49] There is every reason why a similar attitude should be taken with respect to judgments.

. . . . .

"[49] Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U. S. 493 (1939); Alaska Packers Assn. v. Industrial Accident Commission, 294 U. S. 532 (1935); Tennessee Coal Iron & R. R. Co. v. George, 233 U. S. 354 (1914); Atchison, T. & S. F. Ry. v. Sowers, 213 U. S. 55 (1909). . . ." (Some footnotes omitted.)

In *Tennessee Coal, Iron & R. Co.* v. *George,* cited in the authors' footnote, the Court held that a Georgia court, consistent with its full faith and credit obligations, could ignore a provision in the Alabama statute creating the cause of action there sued upon, which required that any suit to enforce the right of action "must be brought in a court of competent jurisdiction within the State of Alabama and not elsewhere." 233 U. S., at 358. The *Sowers* case is much like the *George* case. *Pacific Employers* and *Alaska Packers* are discussed in Part IV, *infra.*

Credit Clause "is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation." *Sherrer* v. *Sherrer,* 334 U. S. 343, 355. To vest the power of determining the extraterritorial effect of a State's own laws and judgments in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent. See *Nevada* v. *Hall,* 440 U. S. 410, 424–425.[16]

Thus, a re-examination of *McCartin*'s "unmistakable language" test reinforces our tentative conclusion that it does not provide an acceptable basis on which to distinguish *Magnolia.* But if we reject that test, we must decide whether to overrule either *Magnolia* or *McCartin.* In making this kind of decision, we must take into account both the practical values served by the doctrine of *stare decisis* and the principles that inform the Full Faith and Credit Clause.

## III

The doctrine of *stare decisis* imposes a severe burden on the litigant who asks us to disavow one of our precedents. For that doctrine not only plays an important role in orderly adjudication;[17] it also serves the broader societal interests in evenhanded, consistent, and predictable application of legal rules. When rights have been created or modified in reliance on established rules of law, the arguments against their change have special force.[18]

---

[16] Cf. Note, Unconstitutional Discrimination in Choice of Law, 77 Colum. L. Rev. 272 (1977) (Privileges and Immunities Clause).

[17] "[I]mitation of the past, until we have a clear reason for a change, no more needs justification than appetite. It is a form of the inevitable to be accepted until we have a clear vision of what different things we want." O. Holmes, Collected Legal Papers 290 (1920).

[18] The doctrine of *stare decisis* has a more limited application when the precedent rests on constitutional grounds, because "correction through

.

It is therefore appropriate to begin the inquiry by considering whether a rule that permits, or a rule that forecloses, successive workmen's compensation awards is more consistent with settled practice. The answer to this question is pellucidly clear.

It should first be noted that *Magnolia*, by only the slimmest majority, see n. 11, *supra*, effected a dramatic change in the law that had previously prevailed throughout the United States. See Mr. Justice Black's dissent in *Magnolia*, 320 U. S..

---

legislative action is practically impossible." *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 407–408 (Brandeis, J., dissenting). See *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600, 627 (POWELL, J., concurring).

The full faith and credit area presents special problems, because the Constitution expressly delegates to Congress the authority "by general Laws [to] prescribe the Manner in which [the States'] Acts, Records and Proceedings shall be proved, *and the Effect thereof.*" (Emphasis added.) See n. 1, *supra*. Yet it is quite clear that Congress' power in this area is not exclusive, for this Court has given effect to the Clause beyond that required by implementing legislation. See *Bradford Electric Co* v *Clapper*, 286 U. S. 145, in which the Court required the New Hampshire courts to respect a Vermont statute which precluded a worker from bringing a common-law action against his employer for job-related injuries where the employment relation was formed in Vermont, even though the injury occurred in New Hampshire. At the time the *Clapper* case was decided, the predecessor of 28 U. S. C. § 1738 included no reference to "Acts" in the sentence that required the forum State to accord the same full faith and credit to records and judicial proceedings as they have in the State from which they are taken. The reference to Acts was added for the first time in 1948. See *Carroll* v. *Lanza*, 349 U. S. 408, 422, n 4 (Frankfurter, J., dissenting). Thus, the *Clapper* case rested on the constitutional Clause alone. *Carroll*, which for all intents and purposes buried whatever was left of *Clapper* after *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493; see 349 U. S., at 412; n. 23, *infra*, cast no doubt on *Clapper's* reliance on the Full Faith and Credit Clause itself

Thus, while Congress clearly has the power to increase the measure of faith and credit that a State must accord to the laws or judgments of another State, there is at least some question whether Congress may cut back on the measure of faith and credit required by a decision of this Court. See Freund 1229–1230.

at 457–459, 462.[19] Of greater importance is the fact that as a practical matter the "unmistakable language" rule of construction announced in *McCartin* left only the narrowest area in which *Magnolia* could have any further precedential value. For the exclusivity language in the Illinois Act construed in *McCartin* was typical of most state workmen's compensation laws. Consequently, it was immediately recognized that *Magnolia* no longer had any significant practical impact.[20] Moreover, since a state legislature seldom focuses on the

---

[19] Professor Larson has pointed out that prior to *Magnolia* and *McCartin*, "state courts, with virtual unanimity, had held or assumed that a prior award under the laws of another state was no bar to an award under local law made in accordance with the local law's own standards of applicability, always of course, with the understanding that the claimant could not have a complete double recovery but must deduct from its present recovery the amount of the prior award." 4 A. Larson, Workmen's Compensation Law § 85.10, pp. 16–15—16–16 (1980) (footnote omitted) (hereinafter A. Larson). See also Wolkin 403, n. 6.

As the majority opinion in *Magnolia* recognized, 320 U. S., at 441, n. 5, the American Law Institute's Restatement of Conflict of Laws § 403 (1934) was flatly contrary to the *Magnolia* result: "Award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable Act, but the amount paid on a prior award in another state will be credited on the second award." As we note below, see n. 21, *infra*, Texas' rule was otherwise.

[20] Virtually every commentator agrees that *McCartin* all but overruled *Magnolia*. See R. Leflar, American Conflicts Law § 162, p. 334 (3d ed. 1977); G. Stumberg, Principles of Conflict of Laws 221 (3d ed. 1963); 4 A. Larson §§ 85.10, 85.20, at 15–16, 16–17; Reese & Johnson 159 ("The dissenters in *Magnolia* saw their day of triumph in . . . *McCartin*. . . . [T]he facts were essentially identical with those of the *Magnolia* case; similarly, the workmen's compensation statutes involved in the two cases were not in any significant manner distinguishable"). See also Recent Cases, 60 Harv. L. Rev. 993, 993–994 (1947) ("By this decision the practical effect of the *Magnolia* case in preventing more than one state applying its workmen's compensation law to the same injury is almost completely nullified . . . , and may foreshadow a modification of 'full faith and credit' as to workmen's compensation judgments similar to that which occurred in regard to legislation"); Comment, 33 Cornell L. Q. 310, 315 (1947).

extraterritorial effect of its enactments,[21] and since a state court has even less occasion to consider whether an award under its State's law is intended to preclude a supplemental award under another State's Workmen's Compensation Act, the probability that any State would thereafter announce a new rule against supplemental awards in other States was extremely remote. As a matter of fact, subsequent cases in the state courts have overwhelmingly followed *McCartin* and permitted successive state workmen's compensation awards.[22]

---

[21] Apparently only Nevada's Workmen's Compensation Act contains the unmistakable language required under the *McCartin* rule. Nevada Rev. Stat. § 616.525 (1979) provides in part:

"[I]f an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside this state, and he . . . accepts any compensation or benefits under the provisions of this chapter, the acceptance of such compensation shall constitute a waiver by such employee . . . of all rights and remedies against the employer at common law *or given under the laws of any other state,* and shall further constitute a full and complete release of such employer from any and all liability arising from such injury. . . ." (Emphasis added.)

In *Magnolia,* the Court noted the existence of a Texas statute precluding a supplemental award in Texas when an injured worker had obtained an award under the workmen's compensation law of another State. 320 U. S., at 435. But that provision, of course, was directed not at the effect Texas desired a Texas award to be given in a second State, but rather at the converse situation. That is, it governed the effect that the Texas Industrial Accident Board had to give to an award previously rendered in another State. See *id.,* at 454 (Black, J., dissenting). While the Texas statute so understood may be obliquely probative of the Texas Legislature's intent as regards the effect to be given a Texas award in another State, that intent is surely not indicated with the unmistakable language required by *McCartin.*

It is worth noting that the Virginia statute involved in this case expressly allows a second recovery in Virginia in certain cases in which a prior recovery has been obtained in another State. Va. Code § 65.1–61 (1980).

[22] See, *e. g., City Products Corp.* v. *Industrial Comm'n,* 19 Ariz. App. 286, 506 P. 2d 1071 (1973) (prior California award); *Jordan* v. *Industrial*

Thus, all that really remained of *Magnolia* after *McCartin* was a largely theoretical difference between what the Court described as "unmistakable language" and the broad language

*Comm'n*, 117 Ariz. 215, 571 P. 2d 712 (App. 1977) (prior Texas award); *McGehee Hatchery Co.* v. *Gunter*, 234 Ark. 113, 350 S. W. 2d 608 (1961) (prior Mississippi award); *Reynolds Electrical & Engineering Co., Inc.* v. *Workmen's Compensation Appeals Bd.*, 65 Cal. 2d 429, 421 P. 2d 96 (1966) (prior Nevada award); *Industrial Track Builders of America* v. *Lemaster*, 429 S. W. 2d 403 (Ky. 1968) (prior Indiana award); *Ryder* v. *Insurance Co. of North America*, 282 So. 2d 771 (La. App. 1973) (prior Georgia award); *Griffin* v. *Universal Underwriters Ins. Co.*, 283 So. 2d 748 (La. 1973) (prior Texas award under statute involved in *Magnolia* held not to preclude second award in Louisiana in light of *McCartin*), cert. denied, 416 U. S. 904; *Lavoie's Case*, 334 Mass. 403, 135 N. E. 2d 750 (1956) (prior Rhode Island award), cert. denied, 352 U. S. 927; *Stanley* v. *Hinchliffe & Kenner*, 395 Mich. 645, 652–653, 238 N. W. 2d 13, 16 (1976) (prior California award) ("It is now widely accepted that *McCartin* severely limited, if not overruled, Magnolia . . ."); *Cook* v. *Minneapolis Bridge Construction Co.*, 231 Minn. 433, 43 N. W. 2d 792 (1950) (prior North Dakota award); *Hubbard* v. *Midland Constructors, Inc.*, 269 Minn. 425, 426, n. 1, 131 N. W. 2d 209, 211, n. 1 (1964) (prior South Dakota award); *Harrison Co.* v. *Norton*, 244 Miss. 752, 146 So. 2d 327 (1962) (prior Georgia award); *Bowers* v. *American Bridge Co.*, 43 N. J. Super. 48, 127 A. 2d 580 (1956), aff'd, 24 N. J. 390, 132 A. 2d 28 (1957) (prior Pennsylvania award); *Hudson* v. *Kingston Contracting Co.*, 58 N. J. Super. 455, 156 A. 2d 491 (1959) (prior Maryland award); *Cramer* v. *State Concrete Corp.*, 39 N. J. 507, 189 A. 2d 213 (1963) (prior New York award); *Bekkedahl* v. *North Dakota Workmen's Compensation Bureau*, 222 N. W. 2d 841 (N. D. 1974) (prior Montana award); *Spietz* v. *Industrial Comm'n*, 251 Wis. 168, 28 N. W. 2d 354 (1947) (prior Montana award).

But see *Gasch* v. *Britton*, 92 U. S. App. D. C. 64, 202 F. 2d 356 (1953) (2-to-1 decision, Fahy, J., dissenting) (prior Maryland award held preclusive of supplemental award in District of Columbia as construction of Maryland law, which construction was specifically rejected by *Hudson, supra*, and, significantly, by the Maryland Court of Appeals in a declaratory judgment action, see *Wood* v. *Aetna Casualty & Surety Co.*, 260 Md. 651, 273 A. 2d 125 (1971)); *Cofer* v. *Industrial Comm'n*, 24 Ariz. App. 357, 359, n. 2, 538 P. 2d 1158, 1160, n 2 (1975) (refusing to permit second award in Arizona after claimant obtained first award in Texas, under

of the exclusive-remedy provision in the Illinois Workmen's Compensation Act involved in *McCartin*.

This history indicates that the principal values underlying the doctrine of *stare decisis* would not be served either by attempting to revive *Magnolia* or by attempting to preserve the uneasy coexistence of *Magnolia* and *McCartin*. The latter attempt could only breed uncertainty and unpredictability, since the application of the "unmistakable language" rule of *McCartin* necessarily depends on a determination by one state tribunal of the effect to be given to statutory language enacted by the legislature of a different State. And the former would represent a rather dramatic change that surely would not promote stability in the law. Moreover, since *Magnolia* has been so rarely followed, there appears to be little danger that there has been any significant reliance on its rule. We conclude that a fresh examination of the full faith and credit issue is therefore entirely appropriate.

## IV

Three different state interests are affected by the potential conflict between Virginia and the District of Columbia. Virginia has a valid interest in placing a limit on the potential liability of companies that transact business within its borders. Both jurisdictions have a valid interest in the welfare of the injured employee—Virginia because the injury occurred within that State, and the District because the injured party was employed and resided there. And finally, Virginia has an interest in having the integrity of its formal determinations of contested issues respected by other sovereigns.

The conflict between the first two interests was resolved in *Alaska Packers Assn.* v. *Industrial Accident Comm'n*, 294 U. S. 532, and a series of later cases. In *Alaska Packers*,

---

compulsion of *Magnolia*, but questioning that case's interpretation of the Texas statute, see n. 21, *supra;* specifically repudiated by *Jordan, supra;* and see *Griffin, supra*).

California, the State where the employment contract was made, was allowed to apply its own workmen's compensation statute despite the statute of Alaska, the place where the injury occurred, which was said to afford the exclusive remedy for injuries occurring there. *Id.*, at 539. The Court held that the conflict between the statutes of two States ought not to be resolved "by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight." *Id.*, at 547.

The converse situation was presented in *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493. In that case the injury occurred in California, and the objection to California's jurisdiction was based on a statute of Massachusetts, the State where the employee resided and where the employment contract had been made. The Massachusetts statute provided that the remedy afforded was exclusive of the worker's " 'right of action at common law or under the law of any other jurisdiction.' " *Id.*, at 498. Again, however, California was permitted to provide the employee with an award under the California statute.[23]

---

[23] The Court reasoned:

"The Supreme Court of California has recognized the conflict and resolved it by holding that the full faith and credit clause does not deny to the courts of California the right to apply its own statute awarding compensation for an injury suffered by an employee within the state.

"To the extent that California is required to give full faith and credit to the conflicting Massachusetts statute it must be denied the right to apply in its own courts its own statute, constitutionally enacted in pursuance of its policy to provide compensation for employees injured in their employment within the state. It must withhold the remedy given by its own statute to its residents by way of compensation for medical, hospital and nursing services rendered to the injured employee, and it must remit him to Massachusetts to secure the administrative remedy

The principle that the Full Faith and Credit Clause does not require a State to subordinate its own compensation policies to those of another State has been consistently applied in more recent cases. *Carroll* v. *Lanza*, 349 U. S. 408; *Crider* v. *Zurich Ins. Co.*, 380 U. S. 39; *Nevada* v. *Hall*, 440 U. S., at 421–424. Indeed, in the *Nevada* case the Court not only rejected the contention that California was required to respect a statutory limitation on the defendant's liability, but did so in a case in which the defendant was the sovereign State itself asserting, alternatively, an immunity from any liability in the courts of California.

It is thus perfectly clear that petitioner could have sought a compensation award in the first instance either in Virginia, the State in which the injury occurred, *Carroll* v. *Lanza, supra; Pacific Employers, supra,*[24] or in the District of Columbia, where petitioner resided, his employer was principally located, and the employment relation was formed, *Cardillo* v. *Liberty Mutual Ins. Co.*, 330 U. S. 469; *Alaska Packers Assn.* v. *Industrial Accident Comm'n, supra.* And as those cases underscore, compensation could have been sought under either

which that state has provided. We cannot say that the full faith and credit clause goes so far.

"While the purpose of that provision was to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in other states, the very nature of the federal union of states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." 306 U. S., at 501.

[24] In *Carroll*, the Court observed that *"Pacific Employers Insurance Co.* v. *Commission*, 306 U. S. 493, departed . . . from the [*Bradford Electric Co.* v.] *Clapper* decision." 349 U. S., at 412. See n. 18, *supra.* The Court's retreat from the rigid *Clapper* rule, which at the time appeared constitutionally to require application of the workmen's compensation law of the State in which the employment relation was centered, to the more flexible balancing of the respective States' interests in *Pacific Employers* parallels the Court's movement from *Magnolia* to *McCartin*.

compensation scheme even if one statute or the other purported to confer an exclusive remedy on petitioner. Thus, for all practical purposes, respondent and its insurer would have had to measure their potential liability exposure by the more generous of the two workmen's compensation schemes in any event. It follows that a State's interest in limiting the potential liability of businesses within the State is not of controlling importance.

It is also manifest that the interest in providing adequate compensation to the injured worker would be fully served by the allowance of successive awards. In this respect the two jurisdictions share a common interest and there is no danger of significant conflict.

The ultimate issue, therefore, is whether Virginia's interest in the integrity of its tribunal's determinations forecloses a second proceeding to obtain a supplemental award in the District of Columbia. We return to the Court's prior resolution of this question in *Magnolia*.

The majority opinion in *Magnolia* took the position that the case called for a straightforward application of full faith and credit law: the worker's injury gave rise to a cause of action; relief was granted by the Texas Industrial Accident Board; that award precluded any further relief in Texas;[25] and further relief was therefore precluded elsewhere as well. The majority relied heavily on *Chicago, R. I. & P. R. Co.* v. *Schendel*, 270 U. S. 611, for the propositions that a workmen's compensation award stands on the same footing as a court judgment, and that a compensation award under one State's law is a bar to a second award under another State's law. See 320 U. S., at 441, 446.

But *Schendel* did not compel the result in *Magnolia*. See 320 U. S., at 448 (Douglas, J., dissenting); *id.*, at 457 (Black, J., dissenting).[26] In *Schendel*, the Court held that an Iowa state

---

[25] Whether the latter was true as a matter of Texas law is open to question. See nn. 21, 22, *supra*.

[26] See also Wolkin 410.

compensation award, which was grounded in a contested factual finding that the deceased railroad employee was engaged in intrastate commerce, precluded a subsequent claim under the Federal Employers' Liability Act (FELA) brought in the Minnesota state courts, which would have required a finding that the employee was engaged in interstate commerce. *Schendel* therefore involved the unexceptionable full faith and credit principle that resolutions of factual matters underlying a judgment must be given the same res judicata effect in the forum State as they have in the rendering State. See *Durfee* v. *Duke,* 375 U. S. 106; *Sherrer* v. *Sherrer,* 334 U. S., at 351–352. The Minnesota courts could not have granted relief under the FELA and also respected the factual finding made in Iowa.[27]

In contrast, neither *Magnolia* nor this case concerns a second State's contrary resolution of a factual matter determined in the first State's proceedings. Unlike the situation in *Schendel,* which involved two mutually exclusive remedies, compensation could be obtained under either Virginia's or the District's workmen's compensation statutes on the basis of the same set of facts. A supplemental award gives full effect to the facts determined by the first award and also allows full credit for payments pursuant to the earlier award. There is neither inconsistency nor double recovery.

We are also persuaded that *Magnolia*'s reliance on *Schendel* for the proposition that workmen's compensation awards stand on the same footing as court judgments was unwarranted. To be sure, as was held in *Schendel,* the factfindings of state administrative tribunals are entitled to the same res judicata effect in the second State as findings by a court. But the critical differences between a court of general juris-

---

[27] "The Iowa proceeding was brought and determined upon the theory that Hope [the deceased worker] was engaged in intrastate commerce; the Minnesota action was brought and determined upon the opposite theory that he was engaged in interstate commerce. The point at issue was the same." 270 U. S., at 616.

diction and an administrative agency with limited statutory authority forecloses the conclusion that constitutional rules applicable to court judgments are necessarily applicable to workmen's compensation awards.

A final judgment entered by a court of general jurisdiction normally establishes not only the measure of the plaintiff's rights but also the limits of the defendant's liability. A traditional application of res judicata principles enables either party to claim the benefit of the judgment insofar as it resolved issues the court had jurisdiction to decide. Although a Virginia court is free to recognize the perhaps paramount interests of another State by choosing to apply that State's law in a particular case, the Industrial Commission of Virginia does not have that power. Its jurisdiction is limited to questions arising under the Virginia Workmen's Compensation Act. See Va. Code § 65:1–92 (1980). Typically, a workmen's compensation tribunal may only apply its own State's law.[28] In this case, the Virginia Commission could and did establish the full measure of petitioner's rights under Virginia law, but it neither could nor purported to determine his rights under the law of the District of Columbia. Full faith

---

[28] See 4 A. Larson § 86.40, at 16–44; Cheatham 344. The reason for this is the special nature of a workmen's compensation remedy. It is not merely a grant of a lump-sum award at the end of an extended adversary proceeding. See 4 A. Larson § 84.20, at 16–9:

"[A] highly developed compensation system does far more than that. It stays with the claimant from the moment of the accident to the time he is fully restored to normal earning capacity. This may involve supervising an ongoing rehabilitation program, perhaps changing or extending it, perhaps providing, repairing, and replacing prosthetic devices, and supplying vocational rehabilitation. Apart from rehabilitation, optimum compensation administration may require reopening of the award from time to time for change of condition or for other reasons. . . ."

Thus, a workmen's compensation remedy is potentially quite different from the application of a particular State's law to a transitory cause of action based on fault. See generally *New York Central R. Co.* v. *White,* 243 U. S. 188.

and credit must be given to the determination that the Virginia Commission had the authority to make; but by a parity of reasoning, full faith and credit need not be given to determinations that it had no power to make.[29] Since it was not requested, and had no authority, to pass on petitioner's rights under District of Columbia law, there can be no constitutional objection to a fresh adjudication of those rights.[30]

It is true, of course, that after Virginia entered its award, that State had an interest in preserving the integrity of what

[29] Cf. Restatement (Second) of Judgments § 61.2 (c) (Tent. Draft No. 5, 1978):

"(1) When any of the following circumstances exists, the general rule of § 61 [under which a valid judgment extinguishes a claim by its merger in the judgment] does not apply to extinguish a claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

. . . . .

"(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief. . . ."

[30] While Professor Larson points out that there are some isolated examples of workmen's compensation tribunals technically having the power to go beyond the confines of their own States' statutes, see 4 A. Larson § 84.30, at 16–13, he also notes that there is "no decisional law . . . showing how this can be done if the filing of a claim with a specified tribunal in the other State is a condition precedent to recovery. Indeed, Vermont [whose statute grants its commission the authority to permit the assertion of rights created under the Acts of other States] refused to use this express statutory power when asked to apply the compensation law of Massachusetts, saying that 'the remedy is an integral part of the right given and the latter has no existence separate and apart from the former.'" Ibid. See Grenier v. Alta Crest Farms, Inc., 115 Vt. 324, 330, 58 A. 2d 884, 888 (1948). Accordingly, it would seem to follow that unless the tribunal actually passes on the injured worker's rights under another State's law, the worker would not be precluded from seeking a second award in that other State.

it had done. And it is squarely within the purpose of the Full Faith and Credit Clause, as explained in *Pacific Employers,* 306 U. S., at 501, "to preserve rights acquired or confirmed under the public acts" of Virginia by requiring other States to recognize their validity. See n. 23, *supra.* Thus, Virginia had an interest in having respondent pay petitioner the amounts specified in its award. Allowing a supplementary recovery in the District does not conflict with that interest.

As we have already noted, Virginia also has a separate interest in placing a ceiling on the potential liability of companies that transact business within the State. But past cases have established that that interest is not strong enough to prevent other States with overlapping jurisdiction over particular injuries from giving effect to their more generous compensation policies when the employee selects the most favorable forum in the first instance. Thus, the only situations in which the *Magnolia* rule would tend to serve that interest are those in which an injured workman has either been constrained by circumstances to seek relief in the less generous forum or has simply made an ill-advised choice of his first forum.

But in neither of those cases is there any reason to give extra weight to the first State's interest in placing a ceiling on the employer's liability than it otherwise would have had. For neither the first nor the second State has any overriding interest in requiring an injured employee to proceed with special caution when first asserting his claim. Compensation proceedings are often initiated informally, without the advice of counsel, and without special attention to the choice of the most appropriate forum. Often the worker is still hospitalized when benefits are sought as was true in this case. And indeed, it is not always the injured worker who institutes the claim. See *Schendel,* 270 U. S., at 614.[31] This informality

---

[31] See also Cheatham 345, and Wolkin 410, pointing out the potential for overreaching by an employer more knowledgeable than the injured em-

is consistent with the interests of both States. A rule forbidding supplemental recoveries under more favorable workmen's compensation schemes would require a far more formal and careful choice on the part of the injured worker than may be possible or desirable when immediate commencement of benefits may be essential.

Thus, whether or not the worker has sought an award from the less generous jurisdiction in the first instance, the vindication of that State's interest in placing a ceiling on employers' liability would inevitably impinge upon the substantial interests of the second jurisdiction in the welfare and subsistence of disabled workers—interests that a court of general jurisdiction might consider, but which must be ignored by the Virginia Industrial Commission. The reasons why the statutory policy of exclusivity of the other jurisdictions involved in *Alaska Packers* and *Pacific Employers*, could not defeat California's implementation of its own compensation policies therefore continue to apply even after the entry of a workmen's compensation award.

Of course, it is for each State to formulate its own policy whether to grant supplemental awards according to its perception of its own interests. We simply conclude that the substantial interests of the second State in these circumstances should not be overridden by another State through an unnecessarily aggressive application of the Full Faith and Credit Clause,[32] as was implicitly recognized at the time of *McCartin*.

_____

ployee about the relative benefits available under the applicable workmen's compensation schemes. See *Magnolia*, 320 U. S., at 450 (Black, J, dissenting):

"Confined to a hospital [the injured worker] was told that he could not recover compensation unless he signed two forms presented to him. As found by the Louisiana trial judge there was printed on each of the forms 'in small type' the designation 'Industrial Accident Board, Austin, Texas.'"

[32] Cf. *Yarborough* v. *Yarborough*, 290 U. S. 202, 227 (Stone, J., dissenting).

We therefore would hold that a State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its workmen's compensation law in the first instance. The Full Faith and Credit Clause should not be construed to preclude successive workmen's compensation awards. Accordingly, *Magnolia Petroleum Co.* v. *Hunt* should be overruled.

The judgment of the Court of Appeals is reversed, and the case is remanded.

*So ordered.*

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join, concurring in the judgment.

I agree that the judgment of the Court of Appeals should be reversed, but I am unable to join in the reasoning by which the plurality reaches that result. Although the plurality argues strenuously that the rule of today's decision is limited to awards by state workmen's compensation boards, it seems to me that the underlying rationale goes much further. If the employer had exercised its statutory right of appeal to the Supreme Court of Virginia and that Court upheld the award, I presume that the plurality's rationale would nevertheless permit a subsequent award in the District of Columbia. Otherwise, employers interested in cutting off the possibility of a subsequent award in another jurisdiction need only seek judicial review of the award in the first forum. But if such a judicial decision is not preclusive in the second forum, then it appears that the plurality's rationale is not limited in its effect to judgments of administrative tribunals.

The plurality contends that unlike courts of general jurisdiction, workmen's compensation tribunals generally have no power to apply the law of another State and thus cannot determine the rights of the parties thereunder. *Ante,* at 282. Yet I see no reason why a judgment should not be entitled to full res judicata effect under the Full Faith and Credit Clause merely because the rendering tribunal was obligated to apply

the law of the forum—provided, of course, as was certainly the case here, that the forum could constitutionally apply its law. The plurality's analysis seems to grant state legislatures the power to delimit the scope of a cause of action for federal full faith and credit purposes merely by enacting choice-of-law rules binding on the State's workmen's compensation tribunals. The plurality criticizes the *McCartin* case for vesting in the State the power to determine the extraterritorial effect of its own laws and judgments, *ante,* at 271; yet it seems that its opinion is subject to the same objection. In any event, I am not convinced that Virginia, by instructing its Industrial Commission to apply Virginia law, could be said to have intended that the cause of action which merges in the Virginia judgment would not include claims under the laws of other States which arise out of precisely the same operative facts.

As a matter of logic, the plurality's analysis would seemingly apply to many everyday tort actions. I see no difference for full faith and credit purposes between a statute which lays down a forum-favoring choice-of-law rule and a common-law doctrine stating the same principle. Hence when a court, having power in the abstract to apply the law of another State, determines by application of the forum's choice-of-law rules to apply the substantive law of the forum, I would think that under the plurality's analysis the judgment would not determine rights arising under the law of some other State. Suppose, for example, that in a wrongful-death action the court enters judgment on liability against the defendant, and determines to apply the law of the forum which sets a limit on the recovery allowed. The plurality's analysis would seem to permit the plaintiff to obtain a subsequent judgment in a second forum for damages exceeding the first forum's liability limit.

The plurality does say that factual determinations by a workmen's compensation board will be entitled to collateral-estoppel effect in a second forum. *Ante,* at 280–281. While this rule does, to an extent, circumscribe the broadest possible

implications of the plurality's reasoning, there would remain many cases, such as the wrongful-death example discussed above, in which the second forum could provide additional recovery as a matter of substantive law while remaining true to the first forum's factual determinations. Moreover, the dispositive issues in tort actions are frequently mixed questions of law and fact as to which the second forum might apply its own rule of decision without obvious violation of the principles articulated by four Members of the Court. Actions by the defendant which satisfy the relevant standard of care in the first forum might nevertheless be considered "negligent" under the law of the second forum.

Hence the plurality's rationale would portend a wide-ranging reassessment of the principles of full faith and credit in many areas. Such a reassessment is not necessarily undesirable if the results are likely to be healthy for the judicial system and consistent with the underlying purposes of the Full Faith and Credit Clause. But at least without the benefit of briefs and arguments directed to the issue, I cannot conclude that the rule advocated by the plurality would have such a beneficial impact.

One purpose of the Full Faith and Credit Clause is to bring an end to litigation. As the Court noted in *Riley* v. *New York Trust Co.*, 315 U. S. 343, 348–349 (1942):

> "Were it not for this full faith and credit provision, so far as the Constitution controls the matter, adversaries could wage again their legal battles whenever they met in other jurisdictions. Each state could control its own courts but itself could not project the effect of its decisions beyond its own boundaries."

The plurality's opinion is at odds with this principle of finality. Plaintiffs dissatisfied with a judgment would have every incentive to seek additional recovery elsewhere, so long as the first forum applied its own law and there was a colorable argument that as a matter of law the second forum would per-

mit a greater recovery. It seems to me grossly unfair that the plaintiff, having the initial choice of the forum, should be given the additional advantage of a second adjudication should his choice prove disappointing. Defendants, on the other hand, would no longer be assured that the judgment of the first forum is conclusive as to their obligations, and would face the prospect of burdensome and multiple litigation based on the same operative facts. Such litigation would also impose added strain on an already overworked judicial system.

Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force. *Sherrer* v. *Sherrer*, 334 U. S. 343, 355 (1948). The plurality's rationale would substantially undercut that function. When a former judgment is set up as a defense under the Full Faith and Credit Clause, the court would be obliged to balance the various state interests involved. But the State of the second forum is not a neutral party to this balance. There seems to be a substantial danger—not presented by the firmer rule of res judicata—that the court in evaluating a full faith and credit defense would give controlling weight to its own parochial interests in concluding that the judgment of the first forum is not res judicata in the subsequent suit.

I would not overrule either *Magnolia* or *McCartin*. To my mind, Mr. Chief Justice Stone's opinion in *Magnolia* states the sounder doctrine; as noted, I do not see any overriding differences between workmen's compensation awards and court judgments that justify different treatment for the two. However, *McCartin* has been on the books for over 30 years and has been widely interpreted by state and federal courts as substantially limiting *Magnolia*. Unlike the plurality's opinion, *McCartin* is not subject to the objection that its principles are applicable outside the workmen's compensation area. Although I find *McCartin* to rest on questionable foundations, I am not now prepared to overrule it. And I agree with the plurality that *McCartin*, rather than *Magnolia*, is controlling as between the two precedents since the Virginia Workmen's

Compensation Act lacks the "unmistakable language" which *McCartin* requires if a workmen's compensation award is to preclude a subsequent award in another State. I therefore concur in the judgment.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE MARSHALL joins, dissenting.

This is clearly a case where the whole is less than the sum of its parts. In choosing between two admittedly inconsistent precedents, *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430 (1943), and *Industrial Comm'n of Wisconsin* v. *McCartin,* 330 U. S. 622 (1947), six of us agree that the latter decision, *McCartin,* is analytically indefensible. See *ante,* at 269–272 (plurality opinion); *infra,* at 291. The remaining three Members of the Court concede that it "rest[s] on questionable foundations." *Ante,* at 289 (opinion of WHITE, J., joined by BURGER, C. J., and POWELL, J.). Nevertheless, when the smoke clears, it is *Magnolia* rather than *McCartin* that the plurality suggests should be overruled. See *ante,* at 285–286. Because I believe that *Magnolia* was correctly decided, and because I fear that the rule proposed by the plurality is both ill-considered and ill-defined, I dissent.

In his opinion for the Court in *Magnolia,* Mr. Chief Justice Stone identified the issue as "whether, under the full faith and credit clause, Art. IV, § 1 of the Constitution of the United States, an award of compensation for personal injury under the Texas Workmen's Compensation Law . . . bars a further recovery of compensation for the same injury under the Louisiana Workmen's Compensation Law. . . ." 320 U. S., at 432. A majority of this Court answered that inquiry in the affirmative,[1] holding that the injured employee "was free

---

[1] The plurality characterizes the majority in *Magnolia* as "tenuous" because Mr. Justice Jackson joined four other Members of the Court in the belief that the result was dictated by *Williams* v *North Carolina,* 317 U. S. 287 (1942), a decision from which he had dissented. See *ante,* at 267, n. 11. I do not read Mr. Justice Jackson's concurrence as casting any doubt upon the logical underpinning of *Magnolia.* Instead, he seemed to

to pursue his remedy in either state but, having chosen to seek it in Texas, where the award was res judicata, the full faith and credit clause precludes him from again seeking a remedy in Louisiana upon the same grounds." *Id.,* at 444. With the substitution of Virginia and the District of Columbia for Texas and Louisiana, this case presents precisely the same question as *Magnolia,* and, I believe, demands precisely the same answer.

As the plurality today properly notes, *Magnolia* received rather rough treatment at the hands of a unanimous Court in *McCartin.* I need not dwell upon the inadequacies of that latter opinion, however, since the plurality itself spotlights those inadequacies quite convincingly. As it observes, *McCartin* is difficult, if not impossible, to reconcile with "normally accepted full faith and credit principles." *Ante,* at 270. I also agree completely with the plurality's ultimate conclusion that the rule announced in *McCartin* "represents an unwarranted delegation to the States of this Court's responsibility for the final arbitration of full faith and credit questions." *Ante,* at 271.

One might suppose that, having destroyed *McCartin's ratio decidendi,* the plurality would return to the eminently defensible position adopted in *Magnolia.* But such is not the case. The plurality instead raises the banner of *"stare decisis"* and sets out in search of a new rationale to support the result reached in *McCartin,* significantly failing to even attempt to do the same thing for *Magnolia.*

If such *post hoc* rationalization seems a bit odd, the theory ultimately chosen by the plurality is even odder. It would seem that, contrary to the assumption of this Court for at least the past 40 years, a judgment awarding workmen's

direct his concurrence at what he perceived to be an inconsistency in the position adopted by Mr. Justice Black and Mr. Justice Douglas, both of whom had joined *Williams* but were dissenting in *Magnolia.* For a similar exchange, see *Dennis* v. *United States,* 339 U. S. 162, 173–175 (1950) (Jackson, J., concurring in result), and *id.,* at 175–181 (Black, J., dissenting).

compensation benefits is no longer entitled to full faith and credit unless, and only to the extent that, such a judgment resolves a disputed issue of fact. I believe that the plurality's justification for such a theory, which apparently first surfaced in a cluster of articles written in the wake of *Magnolia*,[2] does not withstand close scrutiny.

The plurality identifies three different "state interests" at stake in the present case: Virginia's interest in placing a limit on the potential liability of companies doing business in that State, Virginia's interest in the "integrity of its formal determinations of contested issues," and a shared interest of Virginia and the District of Columbia in the welfare of the injured employee. See *ante,* at 277. The plurality then undertakes to balance these interests and concludes that none of Virginia's concerns outweighs the concern of the District of Columbia for the welfare of petitioner.

Whenever this Court, or any court, attempts to balance competing interests it risks undervaluing or even overlooking important concerns. I believe that the plurality's analysis incorporates both errors. First, it asserts that Virginia's interest in limiting the liability of businesses operating within its borders can never outweigh the District of Columbia's interest in protecting its residents. In support of this proposition it cites *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532 (1935), and *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n,* 306 U. S. 493 (1939). Both of those cases, however, involved the degree of faith and credit to be afforded *statutes* of one State by the courts of another State. The present case involves an enforceable *judgment* entered by Virginia after adjudicatory proceedings. In *Magnolia* Mr. Chief Justice Stone, who authored *both Alaska*

---

[2] See Cheatham, Res Judicata and the Full Faith and Credit Clause: Magnolia Petroleum Co. v. Hunt, 44 Colum. L. Rev. 330, 341–346 (1944); Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1210, 1229–1230 (1946); Reese & Johnson, The Scope of Full Faith and Credit to Judgments, 49 Colum L. Rev. 153, 176–177 (1949).

*Packers* and *Pacific Employers,* distinguished those two decisions for precisely this reason, chastising the lower court in that case for overlooking "the distinction, long recognized and applied by this Court, . . . between the faith and credit required to be given to judgments and that to which local common and statutory law is entitled under the Constitution and laws of the United States." 320 U. S., at 436. This distinction, which has also been overlooked by the plurality here, makes perfect sense, since Virginia surely has a stronger interest in limiting an employer's liability to a fixed amount when that employer has already been haled before a Virginia tribunal and adjudged liable than when the employer simply claims the benefit of a Virginia statute in a proceeding brought in another State.

In a similar vein, the plurality completely ignores any interest that Virginia might assert in the finality of its adjudications. While workmen's compensation awards may be "nonfinal" in the sense that they are subject to continuing supervision and modification, Virginia nevertheless has a cognizable interest in requiring persons who avail themselves of its statutory remedy to eschew other alternative remedies that might be available to them. Otherwise, as apparently is the result here, Virginia's efforts and expense on an applicant's behalf are wasted when that applicant obtains a duplicative remedy in another State.

At base, the plurality's balancing analysis is incorrect because it recognizes no significant difference between the events that transpired in this case and those that *would* have transpired had petitioner initially sought his remedy in the District of Columbia. But there are differences. The Commonwealth of Virginia has expended its resources, at petitioner's behest, to provide petitioner with a remedy for his injury and a resolution of his "dispute" with his employer. That employer similarly has expended its resources, again at petitioner's behest, in complying with the judgment entered by Virginia. These efforts, and the corresponding interests in seeing that

those efforts are not wasted, lie at the very heart of the divergent constitutional treatment of judgments and statutes. Compare *Magnolia Petroleum Co.* v. *Hunt* with *Alaska Packers Assn.* v. *Industrial Accident Comm'n* and *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n.* In this case, of course, Virginia and respondent employer expended very few resources in the administrative process. But that observation lends no assistance to the plurality, which would flatly hold that Virginia has absolutely no power to guarantee that a workmen's compensation award will be treated as a final judgment by other States.

In further support of its novel rule, the plurality attempts to distinguish the judgment entered in this case from one entered by a "court of general jurisdiction." See *ante,* at 282–283. Specifically, the plurality points out that the Industrial Commission of Virginia, unlike a state court of general jurisdiction, was limited by statute to consideration of Virginia law. According to the plurality, because the Commission "was not requested, and had no authority, to pass on petitioner's rights under District of Columbia law, there can be no constitutional objection to a fresh adjudication of those rights." *Ante,* at 283. See also *ante,* at 285.

This argument might have some force if petitioner had somehow had Virginia law thrust upon him against his will. In this case, however, petitioner was free to choose the applicable law simply by choosing the forum in which he filed his initial claim. Unless the District of Columbia has an interest in forcing its residents to accept its law regardless of their wishes, I fail to see how the Virginia Commission's inability to look to District of Columbia law impinged upon that latter jurisdiction's interests. I thus fail to see why petitioner's election, as consummated in his Virginia award, should not be given the same full faith and credit as would be afforded a judgment entered by a court of general jurisdiction.

I suspect that my Brethren's insistence on ratifying *McCartin*'s result despite condemnation of its rationale is grounded in no small part upon their concern that injured workers are often coerced or maneuvered into filing their claims in jurisdictions amenable to their employers. There is, however, absolutely no evidence of such overreaching in the present case. Indeed, had there been "fraud, imposition, [or] mistake" in the filing of petitioner's claim, he would have been permitted, upon timely motion, to vacate the award. See *Harris* v. *Diamond Construction Co.*, 184 Va. 711, 720, 36 S. E. 2d 573, 577 (1946). In this regard, the award received by petitioner is treated no differently than any other judicial award, nor should it be.

There are, of course, exceptional judgments that this Court has indicated are not entitled to full faith and credit. See, *e. g., Huntington* v. *Attrile*, 146 U. S. 657 (1892) (penal judgments); *Fall* v. *Eastin*, 215 U. S. 1 (1909) (judgment purporting to convey property in another State). Such exceptions, however, have been "few and far between. . . ." *Williams* v. *North Carolina*, 317 U. S. 287, 295 (1942). Furthermore, as this Court noted in *Magnolia*, there would appear to be no precedent for an exception in the case of a money judgment rendered in a civil suit. See 320 U. S., at 438. In this regard, there is no dispute that the award authorized by the Industrial Commission of Virginia here is, at least as a matter of Virginia law, equivalent to such a money judgment. See Va. Code §§ 65.1–40, 65.1–100.1 (1980).

I fear that the plurality, in its zeal to remedy a perceived imbalance in bargaining power, would badly distort an important constitutional tenet. Its "interest analysis," once removed from the statutory choice-of-law context considered by the Court in *Alaska Packers* and *Pacific Employers*, knows no metes or bounds. Given the modern proliferation of quasi-judicial methods for resolving disputes and of various tribunals of limited jurisdiction, such a rule could only lead to

confusion.[3] I find such uncertainty unacceptable, and prefer the rule originally announced in *Magnolia Petroleum Co.* v. *Hunt,* a rule whose analytical validity is, even yet, unchallenged.

The Full Faith and Credit Clause did not allot to this Court the task of "balancing" interests where the "public Acts, Records, and judicial Proceedings" of a State were involved. It simply directed that they be given the "Full Faith and Credit" that the Court today denies to those of Virginia. I would affirm the judgment of the court below.

---

[3] Arbitration awards, for example, have traditionally been afforded full faith and credit. See, *e. g., Pan American Food Co.* v. *Lester Lawrence & Son, Inc.,* 147 F. Supp. 113 (ND Ill. 1956); *United States Plywood Corp.* v. *Hudson Lumber Co.,* 127 F. Supp. 489 (SDNY 1954); *Port Realty Development Corp.* v. *Aim Consolidated Distribution, Inc.,* 90 Misc. 2d 757, 395 N. Y. S. 2d 905 (1977). Yet such proceedings incorporate many of the same features found important by this Court in excepting workmen's compensation awards from that requirement. See also *ante,* at 288–289 (opinion of WHITE, J.).